Woodman vs. W. L. Clapp and another.

WOODMAN vs. W. L. CLAPP and another.

TAX DEED TO COUNTY.—*In* 1861, *must name both state and county as grantors—In* 1865, *invalid unless clerk's authority from county board shown; except where party entitled to a good deed from county.—Form of deed.—How to be sealed.*

1. Tax deeds executed under ch. 22, Laws of 1859, to the county were invalid where they did not name both the state and county as grantors.
2. Under ch. 112, Laws of 1863, a tax deed running to the county, executed in 1865 by the clerk of the board of supervisors, cannot be read in evidence in a suit between one claiming under it and the original owner of the land, without showing a resolution of the board of supervisors authorizing the clerk to issue it.
3. If, however, the plaintiff offers in evidence tax deeds previously executed to him by the county (but which are defective in form to convey title), for the purpose of showing that he was entitled to a good deed from the county, and in connection therewith offers such a deed as that last above described, the evidence is admissible, and it is not necessary to show a vote of the supervisors authorizing the clerk to issue said last mentioned deed.
4. Under sec. 50, ch. 22, Laws of 1859, the tax deed executed to a county must be in the same form as that executed to an individual, notwithstanding the language of sec. 11 of the same chapter, as amended by ch. 112, Laws of 1863, in regard to the execution of a "deed of release" to the county.
5. Under secs. 50 and 51 of said ch. 22, the tax deed is to be sealed by the clerk of the board of supervisors with the seal of the county only, and does not require, in addition, his private seal. So far as the provisions of sec. 25 are inconsistent with those of secs. 50 and 51, they are suspended by the latter.

APPEAL from the Circuit Court for *St. Croix* County.

Ejectment, commenced some time in 1865. *Clapp* claimed to be in possession under one who held a contract for the purchase of the land from *Tredway*, his co-defendant; and the latter set up title under tax deeds. Plaintiff having shown his original title, the defendants offered in evidence: (1.) Two tax deeds, based upon a sale in September, 1858, covering together the whole land in dispute, executed in 1861, by the clerk of supervisors of said county, and running to the county. They were ruled out, because *the county alone was named as a grantor therein.* (2.) A deed of said lands purporting to be from the county to one Comstock, May 9th, 1863, and to be executed and acknowledged by one Denniston in behalf the county, and

containing a recital of an order of the county board of super-
visors alleged to have been made pursuant to sec. 12, ch. 22,
Laws of 1859, authorizing him so to convey the premises.
This deed seems, from the printed case, to have borne only the
private seal of said Denniston. Objected to generally, and especi-
ally for want of proof of Denniston's authority; and ruled out.
(3.) Quit-claim deed from Comstock to *Tredway*, May 11, 1863,
received in evidence.    (4.) Extracts from the records of the
board of said county, as follows: (a.) Under date of Novem-
ber 21, 1862, authorizing Denniston "to sell and convey by
deed under his hand and seal," for said county, any lands for
which a deed of release had been or might be executed to said
county, *upon sales made in* 1859, on account of delinquent taxes
of 1858; and further providing that the seal of the board
should be affixed to all deeds so executed.    (b.) Under date
December 4, 1863, revoking the authority so granted to Den-
niston, and authorizing the clerk of the board to sell and con-
vey, under his hand and the official seal of said county, any
lands of which a deed of release had theretofore been executed to
said county.    This evidence being received without objection,
defendants then re-offered the deeds before mentioned; but they
were again rejected.    (5.) Two deeds executed December 2,
1862, by the clerk of supervisors of said county, *in the name of
the state alone as grantor*, and together purporting to convey the
whole of the premises in dispute to the county of St. Croix,
upon a tax sale made in September, 1859.    Ruled out.    (6.)
Two deeds, executed December 21, 1865 (after the commence-
ment of this action), by the clerk of supervisors of said county,
with the seal of the county, in the name of the county and state
as grantors, together purporting to convey the whole of the
premises in dispute to said county, upon the sale of September,
1858.    Objected to as void on their face, and for want of evi-
dence of any authority in the clerk, as required by ch. 112,
Laws of 1863, to make the conveyance.    Ruled out.    (7.) Two

deeds executed January 4, 1866, by the clerk of supervisors of said county, with the seal of the county alone affixed, in the name of the county as grantor, together purporting to convey the premises in dispute to John Comstock, and containing a recital of the authority of said clerk under the resolutions of December 4, 1863, above stated.    Objected to on the same grounds as the preceding; and ruled out.    (8.) A quit-claim deed of the premises from Comstock to *Tredway*, read without objection.    (9.) Two tax deeds executed to *Tredway* by said clerk September 24, 1863, and July 23, 1864, respectively, one based upon a sale in 1860, for delinquent taxes of 1859, and the other upon a sale in 1861, for delinquent taxes of 1860.    Both were in due form of law, and embraced the lands in dispute, and were received in evidence.    (10.) A resolution of the board of supervisors of said county, under date December 30, 1865, authorizing and instructing the clerk thereof to execute perfect deeds of all lands sold for taxes previous to September, 1859, which were deeded to individuals, or for which the county had executed a deed of release.    Read without objection.    (11.) A tax deed in the common form, executed in May, 1866, by the clerk of supervisors of said county, with the seal of the county, in the name of both the state and county as grantors, and purporting to convey to the county the lands in dispute.    This instrument had no revenue stamp attached, and contained no recital of the issue of any former deed.    With this was offered also another deed of the same date, executed by the same officer, with the seal of the county only, purporting to convey the premises from said county to Comstock, and containing a recital of the above mentioned order of the board under date December 4, 1863, as constituting the authority of said clerk for executing the same.    There was no revenue stamp attached.    These deeds were objected to generally, as incompetent evidence for any purpose, and particularly on the ground that no authority was shown for their execution; and

VOL. XXI.—24.

were rejected on those grounds. "The defendants then offered to read in evidence each and all the instruments in writing which had theretofore by them been offered, and rejected by the court, in the order of their respective dates. To the reading of each and all of said instruments in evidence the plaintiff objected, and the court sustained said objections. The defendants separately excepted to the ruling of the court sustaining said objections; said exceptions being made to said decisions of the court separately, as each deed was offered and passed upon by the court." The plaintiff then introduced evidence of irregularity in the tax proceedings on which the above-mentioned deeds of 1863 and 1864 (9) were based; and upon this evidence the court instructed the jury that those deeds were void.

Verdict and judgment for the plaintiff; and defendants appealed.

*Allan Dawson* and *H. A. Wilson*, (with *Spooner & Lamb*, of counsel,) for appellants, after arguing the questions common to this cause with the preceding, contended that the deeds to the county executed in December, 1865, and May, 1866, were in proper *form*, and also that they were not invalid for want of a previous order of the board directing their issue. On the latter point they argued substantially as follows: The proviso in ch. 112, Laws of 1863, "that no such deed shall issue until the county board shall, by resolution, order the same," was designed solely to place the issuing of deeds to counties entirely under the control of the county boards. We remark, 1. The issuing of a perfect deed in place of an invalid one previously accepted by the county, does not come within the spirit or meaning of the proviso. 2. If a county accepts a tax deed made without a previous order of the board, it is valid. 3. The acceptance of a valid deed in place of a previous informal one, will be *presumed*, because beneficial; especially when the county had already sold the land, and was under obligation to

refund the purchase money unless the title were made good. 4. The production of a deed to the county, properly executed and recorded, was evidence from which the jury might infer a delivery; and if the case turned upon that question, the judge erred in not submitting it to the jury. 2 Greenl. Ev., 314; 3 Ohio St., 377; 15 Ill., 236; 12 Cal., 231; 34 Pa. St., 254; 40 Me., 582. Besides, no objection was made to the deeds in this case on the ground that they had never been *delivered* to the county (delivery implies acceptance), and an objection of that kind is now too late. *Van Rensellaer v. Secor*, 32 Barb., 469. 5. The resolution of the board on the 30th of December, 1865, directing the clerk to execute and cause to be recorded good and *perfect* deeds &c., if not a ratification of the act of the clerk in issuing the deed of December 21, 1865, was at least evidence from which the jury might have inferred the acceptance of that deed by the board. 6. New deeds were issued in May, 1866, in pursuance of that order. The county, by Denniston, *had* executed a deed of release for these lands to Comstock. It is no impeachment of Denniston's authority, to say that the tax deeds which the county had received were invalid. No one can doubt what the board meant by the language used in the resolution; and as the action of the agent has never been questioned by the board, the plaintiff cannot question it. The deeds of May, 1866, were not void under ch. 32, Laws of 1866, because made after three years from the recording of the imperfect deeds. The right of the county to a perfect deed could not be taken away except through a statute of limitations, and that chapter cannot operate as such in this case, because the imperfect deeds had been recorded more than three years before its passage. The only doubt is, whether, since that chapter, the new tax deed must not contain a recital of the old one. 7. The plaintiff has no standing in court which enables him to question the tax deed to the county as made without the au-

thority of the board.    That is a question between the parties
to the deed.    *St. Louis Pub. Schools v. Risley*, 28 Mo., 419.

*P. A. Orton, Jr.* (with whom was *S. U. Pinney*, of counsel),
for respondent, argued that the several deeds to the county are
invalid, (1.) Because, following the form of tax deed given in
sec. 50, ch. 22, Laws of 1859, they are not deeds of *release*, as
required by sec. 11 of that chapter.    2 Blacks. Comm., 260;
2 Washb. R. P., 606.    (2.) Because it is not executed by the
clerk " in his name of office," i. e. *as grantor* in his official ca-
pacity.    Compare sec. 71, ch. 134, R. S.    If the form in sec.
50 is to be followed in such deeds, the county will appear both
as grantor and grantee.    Again, sec. 95, ch. 15, R. S. 1849, is
identical with sec. 11, ch. 22, Laws of 1859, and was in terms
repealed by sec. 10, ch. 57, Laws of 1853; and by sec. 1, ch.
66, Laws of 1854, was in terms re-enacted; while *by sec. 3 of*
the same chapter, the form of tax deeds now in use was first
prescribed; showing that at that time the legislature contem-
plated the two forms of deeds.    Again, the form of the tax
deed given in sec. 127, ch. 18, R. S. 1858, is in terms made
applicable to deeds to the county as well as those to individu-
als.    If the legislature intended the form of tax deed given in
sec. 50, ch. 22, Laws of 1859, to be used in conveying to coun-
ties, they would have so expressed themselves, as the legisla-
ture of 1858 had done.    (3.) Because they are sealed with the
seal of the county, and not with that of the officer.    If a deed
of release executed under sec. 95, ch. 15, R. S., 1849, without
the seal of the officer, is void (*Eaton v. North*, 20 Wis., 449.;
*Sturtevant v. Mather*, id., 576), a deed of release so executed
under sec. 11, ch. 22, Laws of 1859, is equally void; for those
sections are identical, and are not affected by the form pre-
scribed for tax deeds to individuals.    2. The deed of 1861 is
void, because it omits the name of the state as grantor.    *Lain
v. Cook*, 15 Wis., 446; *Lain v. Shepardson*, 18 id., 59; Black

well, 435; *Edgerton v. Bird*, 6 Wis., 535. 3. If the form given in sec. 50 is to be observed in deeds to the county, the deed to the county for the sale of 1859 is void, because the county is not named as grantor. 4. The deeds of December 21, 1865, were properly rejected, because no resolution of the board was shown, authorizing the clerk to execute the one running to the county. All facts essential to the validity of a tax deed must be shown, to entitle it to be read in evidence, except when the statute makes the deed itself evidence of those facts. Blackwell, 89–94; *Bridge v. Bracken*, 3 Chand., 79. Neither ch. 66, Laws of 1854, nor ch. 22, Laws of 1859, the one making tax deeds *conclusive*, and the other making them *prima facie* evidence of the regularity of the proceedings, can apply to proceedings which were not required by law until the passage of ch. 112, Laws of 1863. Statutes changing the common law rules of evidence, especially when the statutory presumptions indulged in are conclusive, must receive the strictest construction. Blackwell, 100–112. 5. As to the deeds of May, 1866, they are void because not in conformity with ch. 32, Laws of 1866, as well as because the resolution of the board relied on as authority for their execution, empowers the clerk only to issue perfect deeds of lands sold for taxes before 1859, which were deeded to individuals, or for which the county had executed a *deed of release*, and no *such* deed of the lands in question had ever been executed by the county. 6. The county having permitted a third party to purchase at sales subsequent to 1858, and its officers having made deeds upon such sales, it was estopped afterwards from claiming a conveyance on the sale of 1858. If the subsequent sales were valid, titles depending on prior sales would clearly be cut off; if invalid, through the fault of the county officers and agents, the county cannot take advantage of its own wrong. Ch. 32, Laws of 1866, declares that no new deed shall be issued under its provisions, after three years from the record of the informal or

insufficient deed, "nor after a tax deed for a subsequent sale of the same land shall have been issued to a party other than the one claiming such new deed;" and this is merely declaratory of the law as it would exist in the absence of the statute. 7. The deeds *from* the county to Comstock were invalid for other reasons besides the fact that the county had no title to convey. That by Denniston, in 1863, was not authorized by the resolution of the board; first, because that related to lands sold in 1859; and secondly, because it required him to attach the seal of the county board. The only authority claimed for issuing the two executed by White is the resolution of December 4, 1863; but this only authorizes him to convey lands for which *a deed of release had theretofore been executed to said county*. If the county did not obtain title until the execution to it of the deeds of December 21, 1865, and May, 1866, White had no authority to convey. 8. Defendants, claiming title under the sales of 1860 and 1861, by deeds to *Tredway*, are estopped to deny the recitals of fact in those deeds, and consequently cannot claim under a prior sale. For if the prior sale sustains a good title in the county, then the subsequent sales were void, or in fact never took place at all, which is contrary to the recitals in *Tredway's* deeds. 2 Parsons on Con., 340 (c); 1 Greenl. Ev., 26; *Jackson v. Wilson*, 9 Johns., 91; *Jackson v. Parkhurst*, 9 Wend., 209; *Chatauque Bank v. Risley*, 4 Denio, 481; *Fitch v. Baldwin*, 17 Johns., 161; *Carver v. Jackson*, 4 Pet., 80; *Byrne v. Morehouse*, 22 Ill., 603; 2 Abbott's Dig., 585, and cases cited. 9. By sec. 8, ch. 141, R. S., it is sufficient for the plaintiff to show right of possession at the commencement of the action. That right cannot be defeated by deeds of release executed to the county after that time.

COLE, J. It must be admitted that the tax deeds of September 21, 1861, executed by the clerk of the board of supervisors to the county of St. Croix, were informal, because the

state was not a grantor in those deeds. In the form prescribed by the legislature, in section 50, chap. 22, Laws of 1859, the state and county are grantors. Indeed, the section expressly says: "All deeds of land sold for the non-payment of taxes, hereafter executed, shall be executed by the proper officer, authorized by law to execute the same, in the *name of of the state of Wisconsin and of the proper county*, or city, or incorporated town or village, *as the grantors* therein." In the face of such a clear and specific expression of the intention of the legislature, which has the unquestioned right to prescribe the form of a tax deed, so material a defect as the omission of the state as a grantor cannot be disregarded. Substantially the same objection exists to the tax deeds of December 2d, 1862. In those deeds the state alone was named as grantor, and the county was omitted. It is said there is an incongruity in requiring the county to be named as a grantor in a deed which conveys land to itself; or in other words, in the county being a grantor and grantee in the same deed. But this objection can have no weight in view of the fact that the legislature has seen fit to prescribe that a tax deed given to the county shall be executed in this manner. In this connection we were referred to the *Bank of Utica v. Mersereau*, 3 Barb. Ch., 528–576, in support of the position that though these tax deeds might be in some respects informal, yet they might be held valid. It appears to us that the reason and principle of that decision can have but little application here, where the legislature has said that the tax deed shall be substantially in the form prescribed. For with what propriety can it be claimed that the omission of the state or county as grantor is immaterial, when the statute expressly requires that the deed shall be executed by the proper officer, in the name of the state of Wisconsin and of the proper county, as the grantors therein? In the *Bank of Utica v. Mersereau*, where the statute required the comptroller to execute a conveyance of the property sold in the name of the peo-

ple of the state, the chancellor thought that no one, upon examining the deed of the comptroller with the recitals therein contained, could doubt as to the intention of the comptroller to convey the premises for and on behalf of the people of the state; although the people were not technically described as grantors in such conveyance.

There were some peculiar circumstances surrounding that case which seemed to have great weight in the mind of the chancellor, and which do not exist here; and besides the legislature had not attempted to prescribe a form in which tax deeds should be executed. For these reasons we deem the doctrine of that case inapplicable to the defects existing in the tax deeds before us.

The next tax deeds offered by the defendants, and ruled out by the court, were those executed by the clerk, Delos M. White, to the county of St. Croix, bearing date December 21, 1865. My brethren are of the opinion that these deeds were properly excluded from the consideration of the jury, for the reason that no previous order of the county board was shown directing the clerk to execute them. I have had considerable doubt upon the point whether it did not appear in the case that the board ratified the act of the clerk in executing the deed to the county, though no previous order had been made; or, at all events, whether there was not sufficient evidence from which the jury might have inferred an acceptance of the deed on the part of the board. But not being entirely clear upon the question, I defer to the judgment of my brethren. Chap. 112, Laws of 1863, amended section 11, chap. 22, Laws of 1859, by providing that when lands were bid off for a county, and should not be redeemed, the clerk should not execute a deed to the county of such lands until the county board of supervisors should, by resolution, order the same. Under this provision, therefore, it became necessary, in order to entitle these deeds to be read in evidence, to show some resolution of the

board directing the clerk to issue them. And we also think, if the previous tax deeds, together with the deed from Denniston to Comstock, dated May 9, 1863, executed in behalf of St. Croix county, had been offered in evidence in connection with the deeds of December 21, 1865, they would have been admissible to show that Comstock was entitled to a good deed from the county; in which case no resolution of the board directing the clerk to execute the deeds of 1865 would have been necessary. But these previous deeds were not offered for this purpose; and therefore it was incumbent on the defendants to show that the deeds of December 21, 1865, were executed by direction of the board. It is said that the plaintiff has no standing in court which enables him to raise the question whether these deeds were executed by the clerk without authority or not; that this is a matter solely between the county and the clerk, with which the plaintiff has nothing to do. But the plaintiff was the original owner of the land, and holds such a relation to the title that he may inquire whether the board authorized the clerk to execute them. The case of *St. Louis Public Schools v. Risley*, 28 Mo., 415, does not seem to us to be applicable to this case; since there the city was the original owner, and a third party, who had no interest in the matter, attempted to invalidate the deed given by the mayor, on the ground that it was executed without authority. The court said that the objection that the deed was not the act of the corporation, did not come from the city itself, which alone had the right to question the act of its agent in conveying away property belonging to it. If the city was satisfied with the act of the mayor, and was willing the deed should stand, a third party ought not to be permitted to invalidate it. But there is a clear distinction between that case and the one before us, as has just been suggested. Here, the plaintiff, being the original owner, might inquire whether his title was gone in consequence of the tax proceedings.

We have already intimated that the deeds of December 21,

1865, would have been admissible in connection with the previous deeds, without any order of the board directing their execution; or by themselves, if such order had been shown. It is contended by the counsel for the respondent, however, that the deeds were void upon their face, not being such deeds as the law of 1859 contemplates. The 11th section of chap. 22, Laws of 1859, as amended by chap. 112, Laws of 1863, provides that when any lands are bid off for any county, and not redeemed, the clerk "shall execute to the county, in his name of office, *a deed of release* therefor, witnessed and acknowledged in like manner as deeds to individuals, which shall have the same force and effect as conveyances executed by said clerk to individuals for land sold for taxes; provided, that no such deed shall issue until the county board," &c. And in section 12 power is given the county board to authorize the clerk, or any other person, to sell and assign the tax certificates issued for lands bid off for the county, and to sell and convey by deed for the county, any such lands for which a "*deed of release*" has been executed to the same. Upon the strength of these provisions, it is contended that the "deed of release" executed by the clerk to the county should be a different instrument from the form of tax deed prescribed in section 50. We deem this position utterly untenable. We have no idea the legislature intended there should be two forms of conveyance of land sold for taxes; that is, a technical "deed of release" where the conveyance was to the county, and a different conveyance where an individual was the grantee. For, in the language of section 50, already quoted, "all deeds of land sold for non-payment of taxes" are required to be in the form there given. This language is too plain and unambiguous to admit a doubt as to the intention of the legislature. A form for "*all tax deeds*" is prescribed, as well for those executed to the county as those executed to individuals.

But another kindred objection is taken, derived chiefly from

the language used in the 25th section, which is, that where lands sold for taxes are conveyed to the county, the tax deed must be executed under the private seal of the clerk, and also have the seal of the county affixed. Both seals, it is said, are indispensable to a valid deed. This objection must receive the same answer as that given to the previous one. The form of the tax deed given by the legislature does not require the private seal of the clerk, but expressly says that the corporate seal of the county is to be used. Section 51. The 25th section, so far as relates to the form of the deed, is superseded by the subsequent sections of the same law. But it is said, the 25th section and the 50th and 51st took effect *uno flatu*, and therefore the latter sections cannot abrogate the former so far as the form of the deed is concerned, but the deed must be executed so as to meet the requirements of the various provisions. It is, however, a well settled rule in the construction of statutes, "that if the latter part of a statute be repugnant to a former part of it, the latter part shall stand, and, so far as it is repugnant, be a repeal of the former part, because it was last agreed to by the makers of the statute." Sedgw. on Stat. and Con. Law, 129 ; Dwarris on Statutes, marg. p. 675. The intention of the legislature is so clearly expressed in section 50, that all tax deeds thereafter executed should be in the form there prescribed, that whatever in the preceding part of the statute is inconsistent with this intention must give way. And it is very apparent that in this view of the effect of section 50, the decision in *Eaton v. North*, made under section 109, chap. 15, R. S. 1849 (now sec. 25, ch. 22, Laws of 1859), can have no application.

It was not seriously claimed on the argument, that the deed executed by the clerk to the county bearing date May 16th, 1866, was in conformity to the requirements of chap. 32, Laws of 1866 ; and therefore it was rightly excluded from the consideration of the jury.

The other questions discussed in this case are disposed of in the opinion of the chief justice in *Woodman v. H. S. Clapp*, *ante*, p. 350.

It follows from these remarks that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.