# WILSON VS. HENRY and others.

TAX DEED. *(1) Acknowledgment by clerk.*

ADVERSE POSSESSION. *(2) Conditions of actual adverse possession not limited by the statute. (3) Such possession may be by mining. (4) How far tax title defeated by adverse possession under paper title.*

REVERSAL OF JUDGMENT: *(8) For misleading instructions.*

ESTOPPEL. *(9) How far complaint in ejectment estops the ejectment plaintiff in a subsequent action.*

1. Where the statute (Laws of 1859, ch. 22, sec. 50) requires the county clerk to execute a tax deed in the name of the state and county as grantors, and such execution is essential to the validity of the deed, an *acknowledgment* of such a deed by the clerk, stating that it is "the deed of the state and county," implies an acknowledgment that he executed it for said grantors, and is sufficient.

2. Sec. 6, ch. 138, R. S., determines the effect of actual adverse possession of land under paper title, and limits the extent of constructive adverse possession arising from actual adverse possession of part of the land; and sec. 7 defines *some* of the conditions of such actual adverse possession; but there is nothing in the sections restricting those conditions to such as are there defined; and whatever would constitute such possession under paper title outside of the statute, still constitutes it, notwithstanding the statute.

3. Thus, occupation under paper title by *mining operations*, continuous, visible and notorious, may constitute actual adverse possession. *Sydnor v. Palmer*, 29 Wis., 226, explained; and *Wilson v. Henry*, 35 Wis., 241, and *Stephenson v. Wilson*, 37 id., 482, followed.

4. Where one claiming premises *bona fide*, under a paper title, takes actual adverse possession under it so as to interrupt the three years possession of one claiming under a tax deed, he defeats the tax title to the extent of his actual possession and of the constructive possession following upon it under said sec. 6.

5. The rule of said sec. 6, that where the premises consist of a tract divided into lots, "the possession of one lot shall not be deemed the possession of any other lot of the same tract," applies to all actual adverse possession under paper title, whether within or without sec. 7.

6. Where land held under patent from the United States has not been further subdivided by the owner, the "lot" of sec. 6 is the smallest subdivision of land under the laws of the United States (*Pepper v. O'Dowd*, 39 Wis., 538); and when the land here in controversy was entered (in 1847), and thence hitherto, appears to have been a quarter-quarter section.

7. The actual adverse possession of A. by lead-mining confined to one forty-acre tract of the quarter section included in the deed under which he entered, will not oust B.'s actual or constructive possession of the remainder of said quarter section under a tax deed, or disengage the bar of the statute in B.'s favor, or create a bar against him, as to such remainder. *Pepper v. O'Dowd, supra.*

8. Where an instruction is so worded that, as applied to the evidence in the case, it has a tendency to mislead the jury as to the rule of law, judgment on a verdict following the instruction must be reversed.

9. Under our statute, which authorizes ejectment in certain cases against persons not in actual possession, but requires the complaint to aver that the defendant withholds the possession, the record in ejectment, though competent evidence bearing upon the question of possession in a subsequent suit between the same parties or their privies, does not estop the ejectment plaintiff (or one claiming under him) from denying that the defendant in that suit was in possession when the same was brought.

APPEAL from the Circuit Court for *Iowa* County.

This action was commenced in October, 1871. The complaint avers, in substance, that plaintiff is owner in fee, entitled to the possession, and in actual possession, of a certain described quarter section of land; and that defendants, on the 21st day of October, 1871, broke and entered upon the premises, and attempted to take possession thereof, and committed damage thereon to the amount of $100. It further avers an intention and threats of defendants to take possession of the premises by force. And it prays for a judgment against defendants for $100, and also for an injunctional order restraining defendants from meddling with plaintiff's occupation of the premises until the further order of the court.

The separate answer of the defendant *Poquette* denies plaintiff's title, and admits that on the 21st of October, 1871, at the request of the defendant *Henry*, he took possession of a dwelling house on said premises, claims that he is still in possession of said dwelling house, but denies that he took possession by force, or in any manner injured the plaintiff; and in general denies all averments of the complaint not admitted as above stated.

The separate answer of the defendant *Henry* denies that plaintiff is the owner in fee or entitled to the possession of the premises, and avers that one Stephenson is such owner and so entitled; that said Stephenson had been the owner and in actual possession since May 8, 1857; that he and his grantors, and the parties through whom he claimed title, had been the owners in fee simple and in actual possession since July 24, 1847; that *Henry* had been for many years Stephenson's agent in collecting rents and paying taxes on said lands, and as such agent had been in actual possession since 1856, of the two hundred acres of land of which the premises in dispute are a part; and that as such agent, on the 21st of October, 1871, he entered upon the premises and erected a dwelling house thereon, and leased said lands and dwelling house to the defendant *Poquette*, who on the same day entered into possession of said dwelling house as Stephenson's tenant. The answer further alleges that plaintiff claims title through a tax deed, dated February 3, 1868, executed by the clerk of the board of supervisors of said county to one Moffett; and it pleads the statute of limitations against such deed. The answer denies all averments of the complaint not expressly admitted.

The plaintiff replied, denying the allegations of *Henry's* answer as to Stephenson's title and possession, and as to *Henry's* actual possession as Stephenson's agent or otherwise. The reply also set out a complaint filed by Stephenson in said circuit court, in an action commenced by him against *Wilson*, the present plaintiff, January 12, 1870. This complaint was in ejectment for the premises here in dispute, and alleged Stephenson's title and right of possession, and that *Wilson* unlawfully withheld the possession; and it asked judgment for a recovery of the possession and for $500 damages. The reply alleges that *Wilson's* answer to said complaint admitted his possession of the premises; that said action of ejectment was at issue and pending in said court until about October 11,

1871, when the complaint therein was withdrawn and the action dismissed. The reply also asserts the validity of plaintiff's title under the tax deed to Moffett above described, and insists that Stephenson and those claiming under him are barred from claiming any interest in the premises adversely to such tax deed.

On the trial, the plaintiff put in evidence the tax deed mentioned in the pleadings, in which the county of Iowa and the state of Wisconsin are named as grantors, and Moffett, as assignee of the county, as grantee. The deed is executed by one Otis as clerk of the board of supervisors of said county. The certificate of acknowledgment of said deed states that said Otis, clerk, etc., "acknowledges the within and foregoing deed of conveyance to be *the free act and deed of said county and state*, for the use and purpose therein named." An objection to the deed as evidence, on this ground, was overruled. Plaintiff then put in evidence a quit-claim deed of the premises to him from Moffett, dated April 15, 1868, and recorded November 13, 1869. It was admitted that *Henry*, on the 21st of October, 1871, entered on the land, built a small house thereon, claiming a right to do so under Stephenson, and did damage to the amount of one dollar. Plaintiff then testified that the land was suitable mainly for agricultural purposes, and that a little mining had been done on four or five acres of the southern portion of it; and that from the date of the tax deed until October, 1871, the land was unimproved, uncultivated and unoccupied; and that on the day last mentioned, he set men at work upon it digging post holes for a fence. The plaintiff also put in evidence the record of the action in ejectment brought against him by Stephenson in 1870. This record tended to prove the averments in relation thereto recited in the above statement of the reply herein.

Defendants offered to prove that on the 7th of October, 1873 (the day of the first trial of this action), Stephenson had deposited with the proper officer, for the purpose of redeeming

the land in dispute, the sum necessary for that purpose; but the evidence was rejected. The defense then put in evidence, 1. A patent of the premises issued September 3, 1847, to one Tuttle, pursuant to a previous location by Tuttle of a military land-warrant, under an act of congress of July 27, 1842. 2. Certain secondary proof of the execution by Tuttle, on the 24th of June, 1846, of a power of attorney to one Lyon and one Henn, purporting to authorize them to locate said land-warrant and to convey the land; together with evidence of the loss of such power of attorney. 3. A warranty deed of the premises, executed September 1, 1847, to one Bequette, by Henn as attorney for Tuttle. Although this deed, executed before the patent to Tuttle, was insufficient to pass the title (*Stephenson v. Wilson and another*, 37 Wis., 482), it was admitted in evidence as the basis of a claim of title by possession. 4. Mesne conveyances by which the rights of Bequette under said deed passed to Stephenson, May 8, 1857. 5. A deed of the premises from Tuttle to one Foster, dated April 4, 1848, and a like deed from Foster to one Nichols, dated October 20, 1849. (A like deed from Nichols to Stephenson, dated July 13, 1872, was offered, but ruled out.) 7. Testimony tending to show that *Henry* had been agent for Stephenson in respect to the premises, since July 23, 1857, on which day he had it surveyed, and on which day, also, there were eight men mining on the land, who attorned to Stephenson; that from that time until the commencement of this action, there had been, every winter, a number of miners at work on the land by permission of *Henry* and his subagents, paying rent when mineral was obtained, their number varying, from time to time, from four to eight; that during the summers, there were miners at work occasionally, though not at all times, the miners being generally engaged in farm labor, elsewhere, during that season; that a custom existed in that region, which was recognized by *Henry* and his subagents, that a miner who worked the land in winter

did not forfeit his right thereto by not working during the summer; that the windlasses and tools of the miners were at all times on the ground, ready for use; that there was a hay bottom of five or six acres near the north end of the land, which was leased by *Henry*, and the crop of hay thereon cut and removed from 1857 to 1869 or 1870; and that Stephenson had paid the taxes upon the land for each year after 1857. As to the three years immediately succeeding the recording of plaintiff's tax deed, defendant's evidence tended to show that mining was done upon a portion of the land, under Stephenson, every year in the manner above described. As to the portions of the quarter section on which such mining had been done, by persons attorning to Stephenson, the evidence for defendants was not very clear or definite; but seems to have related chiefly, if not wholly, to a portion of the quarter section near its southern end. The evidence as to a custom by which miners did not forfeit their claims by failing to work them in the summer, was received against plaintiff's objection. Plaintiff also introduced evidence in rebuttal to disprove the alleged custom, and to show that there had never been any continuous mining by persons attorning to Stephenson, on any part of the premises for any three consecutive years; that the only diggings of any importance were on a limited tract at the south end of the premises; and that plaintiff had been in actual and undisputed possession of the whole or a portion of the premises during the whole or a portion of the three years immediately subsequent to the recording of his tax deed.

The court instructed the jury, in substance, that no record title had been shown in Stephenson; that if he or those under whom he claimed had gone into actual possession of the land, and continued in such possession for ten successive years, such possession being exclusive, open and so notorious that all persons having an interest in or claim upon the land must be presumed to have known it, and its adverse character, and

such occupancy being for the purpose of mining or other ordinary use to which land may be applied by the ordinary industry of the country, then Stephenson's defective paper title under Bequette would be perfected by such adverse possession; that the tax deed to Moffett was sufficient to extinguish any preëxisting title; but that, whether Stephenson's title had or had not been perfected by adverse possession at the time when the tax deed was recorded, " if Stephenson or his agent or tenant openly occupied the land and mined thereon, for the purpose of obtaining lead ore, for any part of the three years next after the recording of the tax deed, this would bar the title under such deed," and the verdict must be for the defendants; but that " if the land was vacant and unoccupied by any person under the authority, or permission, or consent, of Stephenson or his agent, for three years next after the recording of the tax deed," the verdict should be for the plaintiff.

The jury found for the defendants; a new trial was denied; and plaintiff appealed from a judgment on the verdict.

*Alexander Wilson,* the appellant, in person, argued that in this state a tax deed vests in the grantee an absolute estate in fee simple in the land (R. S., ch. 18, sec. 127), and carries with it constructive possession of the land, so far as unoccupied (*Lewis v. Disher,* 32 Wis., 507; *Lawrence v. Kenney,* id., 281); and the grantee can maintain trespass thereon, as well as upon any other deed (*Harding v. Tibbils,* 15 Wis., 232). 2. That as the land here in dispute had never been cultivated or improved, or inclosed, and was not part of a " known farm," adverse possession thereof, to grow into a title, must be continuous for the period prescribed by sec. 6, ch. 134, R. S., and must be such as to bring it within subd. 3, sec. 7 of that chapter; i.e., it must have been " used for the supply of fuel or of fencing for the purpose of husbandry or the ordinary use of the occupant." This court has recently declared, in *Pepper v. O'Dowd,* 39 Wis., 538, that " land, to come within this sub-

division, must be used *for the supply of fuel or fencing*, according to the subdivision, and, we are inclined to think, must be for that use as its sole or principal object, in good faith." In support of the same construction, see *Sydnor v. Palmer*, 29 Wis., 226; *Dupont v. Davis*, 35 id., 631; *Munro v. Merchant*, 26 Barb., 383. (Counsel criticised the opinions in *Wilson v. Henry*, 35 Wis., 241, and *Stephenson v. Wilson*, 37 id., 494, as inconsistent with those just cited.) The bog iron ores in the northwestern part of this state are on the surface of the land. In several places in the southwestern part of the state, the lead ore "float" comes up to the grass roots. These lands are also good agricultural lands. Will mining for such surface ores be evidence of adverse possession? Does it amount to more than the cutting of grass or occasional cutting and hauling of timber? Where will the line be drawn between surface, shallow and deep mining? There is no husbandry about it, no improvement of the soil. Other states construe adverse possession as this court has latterly construed it, notwithstanding their mining lands. *Munro v. Merchant*, 26 Barb., 383; *People v. Livingston*, 8 id., 255; *Wood v. McGuire*, 15 Ga., 202; *Wheeler v. Winn*, 53 Pa. St., 122; *Young v. Herdic*, 55 id., 172. 3. That adverse possession to bar title under a tax deed must be of the same kind as that which bars the original title. Laws of 1859, ch. 22, sec. 34. 4. That if Stephenson had neither the record title, nor title by possession before the recording of the tax deed, occupancy under him after the recording of that deed would not operate to bar the plaintiff's title. It is only the *owner*, whose title is extinguished by the tax deed, who can, by occupancy during the three years immediately subsequent to the recording of that deed, bar the title under it. *Gunnison v. Hoehne*, 18 Wis., 269; *Knox v. Cleveland*, 13 id., 250; *McMahon v. McGraw*, 26 id., 621; *Parish v. Eager*, 15 id., 590; *Wheeler v. Winn*, 53 Pa. St., 122; 33 id., 462; 6 id., 210. 5. That where two persons are upon land, each claiming title

and right of possession, and each doing acts in assertion of such right, the one who has the *title* is to be considered as in actual possession, and the other person as a trespasser. *Jones v. Chapman*, 2 Exch., 821; 1 Hilliard on Torts (3d ed.), 505.

For the respondent a brief was filed, signed by *Henry & Smith* and *P. A. Orton*, and there was oral argument by *J. M. Smith*. It was contended on that side, 1. That the tax deed to Moffett never vested title in him. (1) It was not duly acknowledged, since the statute requires that " the person executing the deed [in this case the clerk] shall acknowledge the *execution thereof*," i. e., its execution by *himself*. *Hayden v. Wescott*, 11 Conn., 131; *Bryan v. Ramirez*, 8 Cal., 461; *Henderson v. Grewell*, id., 581; *Short v. Conlee*, 28 Ill., 219; *Smith v. Garden*, 28 Wis., 686. (2) A tax deed not duly acknowledged is not even *prima facie* evidence of title. Laws of 1859, ch. 22, sec. 25; *Wood v. Meyer*, 36 Wis., 308. (3) If not properly acknowledged, the deed is not validly recorded, and the right of redemption still exists; and proof of such redemption was offered at the trial. 2. That any occupation of the land by Stephenson, claiming in good faith under his deed, during the three years next after the recording of the tax deed, would bar the tax title. Tay. Stats., 440, § 172; *Wilson v. Henry*, 35 Wis., 241. This is *res adjudicata* in this case. *Wright v. Sperry*, 25 Wis., 617. 3. That the possession by the former owner which will bar the title under a tax deed if action thereon be not brought within three years, is quite different from the adverse possession for ten or twenty years defined in the general statute of limitations. In the former case, the original owner has only to show that the premises at some time during the whole three years were *not unoccupied*. Slight occupancy, with every presumption in favor of the former owner, would support this conclusion; and the possession of Stephenson's mining tenants at any time during the three years was sufficient. *Jones v. Collins*, 16 Wis., 594; *Wilson v. Henry*, 35 id., 241; *Lewis v. Disher*, 32 id., 504;

*Stephenson v. Wilson,* 37 id., 482.   6. That the complaint in the ejectment suit by Stephenson against *Wilson* does not estop Stephenson from denying that *Wilson* was then in possession; that action having been dismissed by Stephenson, and the complaint being in the form required by the statute even where the land is wholly unoccupied.   *Barclay v. Yeomans,* 27 Wis., 683; *Platto v. Jante,* 35 id., 630.

RYAN, C. J.   The respondent's criticism on the acknowledgment of the tax deed under which the appellant claims, is ingenious, but too nice to support the objection to the deed. *Winans v. Ins. Co.,* 38 Wis., 342; *Dousman v. Mining Co., ante,* p. 418.

Sec. 50, ch. 22 of 1859, requires the clerk to execute the deed in the name of the state and the county, as grantors; and it is essential to the validity of the deed, that they purport to be the grantors in it.   *Woodman v. Clapp,* 21 Wis., 355.   Sec. 25 requires the clerk to acknowledge the deed.   The clerk acknowledged this deed to be the deed of the state and county. Perhaps it would have been more proper for him to have acknowledged his execution of the deed for the state and county. But the distinction is very nice.   In either form, it is very certain that the clerk who executes the deed, in acknowledging it, implies an acknowledgment of his own execution of it. And as he is the officer authorized by law to execute the deed in the name of the grantors, his own acknowledgment might be sufficient.   The certificate here shows that he acknowledged the deed for the grantors, and that appears to us a sufficient compliance with the statute.   Ch. 86, sec. 8, R. S.   A substantial compliance is sufficient.   *Myrick v. McMillan,* 13 Wis., 188; *Wilson v. Hunter,* 14 id., 683; *Smith v. Garden,* 28 id., 685.

The learned appellant appeared to assume that there is a conflict in the cases in this court, on the subject of actual adverse possession.   We think this a mistake.   It appears to

rest upon the idea that secs. 6 and 7, ch. 138, R. S., assume to exhaust the conditions of actual adverse possession under paper title. Such a view would be an entire misapprehension of the scope and tenor of those sections, and of the construction given to them by this court.

Sec. 6 limits the extent of constructive adverse possession, under paper title, arising from actual adverse possession of part only of the premises included in the paper title. But, like sec. 8, it gives the effect of actual adverse possession, without attempting to define what shall or shall not constitute such possession. Sec. 7, however, " proceeds to define *some* conditions of adverse possession under sec. 6." *Pepper v. O'Dowd*, 39 Wis., 538. The object of sec. 7 is obviously to establish certain rules of actual adverse possession, which the legislature considered just and necessary in view of the habits of the people. But the section does not undertake the dangerous task of codifying all conditions and qualities of actual adverse possession. This is manifest in the language of the section. " For the purpose of constituting an adverse possession, land shall be deemed to have been possessed and occupied in the following cases." Here is no restrictive phrase; no sign of a restrictive intent. No one of the conditions given goes upon a *pedis possessio;* perhaps more properly written, *pedis positio; possessio est quasi pedis positio;* a rule " ill suited to a country in which a large proportion of every man's land is uninclosed." GIBSON, C. J., in *Waggoner v. Hastings*, 5 Pa. St., 300. The conditions given in the section are probably all conditions which would fail to uphold an adverse possession at common law. *Jackson v. Schoonmaker*, 2 Johns., 230; *Bailey v. Irby*, 2 Nott & McC., 343. Noticeably, not one of the conditions goes upon perhaps the most perfect quality of actual possession, actual residence. For one may well enter under paper title and reside upon land, not cultivated, improved, inclosed, or used for fuel or fencing, within the meaning of the section; some or all of these conditions per-

haps following later. So one might occupy land, uncultivated, unimproved, uninclosed, unused for fencing or fuel, for a lumber or coal or wood yard, or for storing other heavy goods, or for the manufacture of staves or other wooden ware from growing timber, so as to constitute a continuous, visible and notorious adverse possession. None of these cases or others which can be supposed, appear to come within the terms of the section. Yet there is nothing in the section to exclude them. And it is inconceivable that the legislature could have intended to exclude them. Giving the character of actual possession to conditions which might otherwise uphold constructive possession only, it cannot be supposed that the section was intended to exclude cases of absolute possession, unaccompanied by such conditions. Manifestly the design of the section was to supply certain conditions of actual adverse possession, not to exclude others. This is the plain import of the language used, and the construction given to the section in *Pepper v. O'Dowd*, not questioned in any other case in this court which we are able to recall. Sec. 6 is therefore held to limit and define the extent of constructive adverse possession, arising from actual adverse possession under paper title, in all cases, whatever may be the nature of such actual possession; and sec. 7 is held to define given conditions, but not to limit the conditions, of actual adverse possession. Whatever would constitute actual adverse possession under paper title, outside of the statute, still constitutes it, notwithstanding the statutory definition of other conditions of such possession.

It is true that in *Sydnor v. Palmer*, 29 Wis., 226, the chief justice, upon a casual reading of his opinion, would seem to refer all actual adverse possession to sec. 7; but a careful consideration of the opinion will show that he did not fall into that error. That was a case of actual adverse possession claimed by force of mining operations. The court below had read secs. 6 and 7 as a part of the charge, and instructed the jury that the possession claimed, came within section 7.

The opinion simply, and beyond doubt correctly, holds that this was error; summing up the discussion in these words: "It seems clear, therefore, that all the provisions of the statute relate, and are intended to apply only, to the use and occupation of land for the purposes of husbandry; and that its use or occupation for the purpose of digging mineral, or other works and operations beneath the surface, and not connected with agriculture or the ordinary use and cultivation of the soil, is not included. But it may be said that these observations are unnecessary; and so in strictness they seem to be, since, notwithstanding the instruction, the jury found there had been no adverse possession for the period of ten years before the commencement of the action." Whether or not material in that case, the view of the statute thus taken is undoubtedly correct, so far as it goes; but we find no word in the opinion going to hold that the provisions of sec. 7 are exclusive of all other actual adverse possession. And this construction of the opinion in that case, and of the statute, is tacitly recognized by the same learned judge in *Wilson v. Henry*, 35 Wis., 241. For it is held in that case that possession under color of title, by mining operations, would be sufficient to disengage the bar of the statute of limitations in favor of the grantee by tax deed, and to create a bar against him. And so it is correctly said by COLE, J., in *Stephenson v. Wilson*, 37 Wis., 482: "The doctrine of the case of *Sydnor v. Palmer* was not supposed to be in conflict with that of *Wilson v. Henry* by the chief justice, who wrote both opinions, nor did the other members of the court understand that it was."

So, in the latter case, *Stephenson v. Wilson*, some language in the opinion might possibly bear the construction of referring all actual adverse possession to sec. 7. But it is used only in comment upon the construction given at the bar to *Sydnor v. Palmer*. It is said that the remark of the chief justice in *Sydnor v. Palmer*, already noticed, was unnecessary

and so stated to be at the time, and added: "Still the defendant relies upon it more or less to sustain the construction of the statute for which he contends. In the broad sense in which the language is used or is attempted to be applied, we think the remark needs qualification." There is nothing here at all in conflict with the construction of the statute adopted in *Pepper v. O'Dowd*, and in this case. And indeed that construction is implied in *Stephenson v. Wilson*, as well as in *Wilson v. Henry*, by upholding actual adverse possession by mining operations, which are clearly within none of the four subdivisions of sec. 7.

Whatever doubt, therefore, might be implied from the language used in *Sydnor v. Palmer*, it is settled in *Wilson v. Henry* and *Stephenson v. Wilson*, that occupation under paper title by mining operations, continuous, visible and notorious, may constitute actual adverse possession. And we have no doubt of the correctness of the rule. Sec. 7 was undoubtedly framed mainly in view of agricultural occupation; and, in the circumstances of the state, was undoubtedly wise and just. But, though mining is a less general and important, it is still a frequent and important industry here, entitled to protection as well as agriculture. It is not protected by the statute, as agriculture is; but there is no reason why it should be proscribed by the statute, and we have seen that it certainly is not. While the law remains as it is, it is not an open question in this court that mining operations may constitute actual adverse possession. In the present case it is *res adjudicata;* for *Wilson v. Henry* was another appeal in this cause; and it was there held that the very mining operations set up by the respondent here, if proved to be continuous, visible and notorious, would constitute actual adverse possession, sufficient "not only to disengage the bar of the statute when resorted to in favor of the grantee by tax deed [the present appellant], but also to create a bar against him and in favor of the title of such former own-

er " (the present respondent's principal, in whose right he defends).

We cannot think it material in this case, that in *Stephenson v. Wilson* we held the legal title of the respondent to be defective because the patentee's deed, under which the respondent claimed by mesne conveyances, was void under an act of congress. Neither can we follow what was somewhat loosely said in *Wilson v. Henry*, to the effect that the respondent's principal, Stephenson, must be held as the true owner, notwithstanding technical defects in his title; and that the appellant, claiming under a tax deed, could not take advantage of such defects in Stephenson's title. This view was unnecessary to the decision of that appeal, and appears to disregard the rule that a plaintiff, seeking to recover on his legal title, must recover on the strength of his own and not on the weakness of his adversary's. But a perfect legal title was unnecessary to Stephenson or his representative in that appeal, as it is in this. Certain it is, that if Stephenson took any possession, he took it "under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question," within sec. 6. Such an entry, as is held in *Wilson v. Henry*, would operate to begin an actual adverse possession, to cure all defects of his title in ten years, and would therefore break the bar of the statute in favor of the tax title. For it would be too absurd to suggest that there could be a constructive adverse possession of the same premises in one, and an actual adverse possession in another, each running to bar the other in statutory time; or that there could be actual adverse possession of the same premises, in different claimants, under different titles, each running at the same time, to bar the other. If the respondent's principal, Stephenson, could take actual adverse possession to bar any one, he could to bar the appellant.

Stephenson appears to claim the premises, *bona fide*, under

a paper title, which he took believing it to be good. His possession is very distinguishable, under the statute, from a mere trespass, as in *Gunnison v. Hoehne*, 18 Wis., 268.

If Stephenson took actual adverse possession, under his paper title, so as to interrupt the three years' possession of the appellant under sec. 32, ch. 22 of 1859, he would presumably have defeated the appellant's title, to the extent of such actual possession and of the constructive possession following upon it under sec. 6, ch. 138.

This brings us back to the latter section. Our views of the object of this section are fully explained . in *Pepper v. O'Dowd*, and need not be repeated here. We then gave and now affirm this construction of the scope and effect of its provisions: "Sec. 6 enacts, what was generally recognized as the law before the statute, that when one enters into and holds continual possession, under a paper title, of part of the premises included in it, he shall be deemed to hold adversely all the premises included in it; that is, when one enters under color of title, he is presumed to enter claiming according to the extent of his title (*Sydnor v. Palmer*, 29 Wis., 226), and where there is no adverse possession, the law will construe his entry to be coëxtensive with his title (*Ellicott v. Pearl*, 10 Pet., 412), 'except that when the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed the possession of any other lot of the same tract.' This exception materially restricts the rule of constructive adverse possession, as held before the statute; and unquestionbly enters into every condition of adverse possession under these sections, save only in the instance of a *known farm*, substituted by subd. 4 of sec. 7 for *a single lot*. And so, under these sections, actual adverse possession of part of a single lot or a known farm shall not operate as constructive adverse possession beyond the limits of such lot or farm." "There is no difficulty in determining what a *single lot* of the statute is. It is the smallest legal subdivision of land.

*Munro v. Merchant, supra.*" And the rule of sec. 6 undoubtedly applies to all actual adverse possession under paper title, whether within or without sec. 7.

|· When land has not been further subdivided by the owner under patent from the United States, the lot of sec. 6 is undoubtedly the smallest subdivision of land under the land laws of the United States. At the time when the land in controversy was entered, and thence hitherto, this appears to have been generally a quarter-quarter section of land, forty acres. See act of Congress of April 5th, 1832, 4 U. S. Stat. at Large, 503; Act of Congress of May 8th, 1846, 9 U. S. Stat. at Large, 9; Circular of the Commissioner of the General Land Office of May 14th, 1846, 1 Lester's Land Laws, 376.

And so any actual adverse possession of Stephenson, the respondent's principal, would not operate as constructive adverse possession beyond the limits of the forty-acre lot on which the actual possession was held. And, being so limited, it could not, within the rule in *Wilson v. Henry* and *Stephenson v. Wilson*, affirmed in this opinion, operate to oust any actual or constructive possession of the appellant, or to disengage the bar of the statute in his favor, or to create a bar against the appellant and in favor of the respondent's principal, outside of the forty-acre lot of which the actual adverse possession was held. *Pepper v. O'Dowd, supra.*

It is unnecessary to recapitulate the evidence bearing on the actual possession claimed by the respondent for his principal. It is sufficient to say that it does not appear to have covered each of the quarters of the quarter section in controversy.

In view of the evidence and as applicable to it, we cannot but hold that the charge of the court below overlooked the provision of sec. 6, limiting the constructive effect of actual possession to a single lot, or else applied it to the whole quarter section: "a tract divided into lots." Whichever the mistake was, it is equally fatal to the judgment. It is true that the charge speaks throughout of Stephenson's occupying and mining the

land, without any distinction between the whole or a part; but the fair construction of the charge, in the light of the evidence is, that occupation and mining on any part of the quarter section would equally affect the appellant's claim of title to the whole. A jury, having heard the evidence, would presumably give it that construction; we think that a lawyer would. Be that as it may, when an instruction is so worded that, as applied to the evidence in the case, it has a tendency to mislead the jury as to the rule of law, judgment on a verdict following the instruction must be reversed. *Hutchinson v. Railway Co.*, 37 Wis., 582, and cases there cited. The rule, as held in *Pepper v. O'Dowd*, should have been fully and distinctly given to the jury.

The record of the ejectment suit of *Stephenson v. Wilson* was apparently competent evidence bearing on the question of possession, *valeat quantum;* but it was certainly not conclusive. The statute authorizes an action of ejectment, in certain cases, against persons not in actual possession, but requires the complaint to aver that the defendant withholds the possession. *Platto v. Jante*, 35 Wis., 629, and cases there cited. The averment of possession, in such a case, is therefore not only formal, but untrue in fact; yet made imperative by an apparent oversight in the statute. *Barclay v. Yeomans*, 27 Wis., 682. And it would be unreasonable and unjust to hold it an estoppel.

We have been reluctant to disturb a second judgment in this cause; but our views of the law governing it leave us no choice.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.