(No. 6533.   July 21, 1938.)

J. A. ALLEN, Respondent, v. LUCY LAUDAHN, Appellant.

[81 Pac. (2d) 734.]

208

Leo McCarty and R. Hubbard, for Appellant.

Cox, Ware & Stellmon and Therett Towles, for Respondent.

BUDGE, J.—This is an action brought by respondent to quiet title to certain mining claims in what is known as the Deer Creek Mining District, located in Nez Perce and Lewis counties. Both parties concede that their rights are subject to the paramount title of the United States.

It may be well at the outset to call attention to the fact that respondent Allen and appellant Laudahn are the only parties before this court, other matters in this litigation concerning various defendants and cross-complainants having been disposed of in the trial court.

Upon issues joined by the amended and supplemental complaint of respondent and the answers and cross-complaint of appellant the case came on for trial before the court without a jury and after appellant rested her case respondent made a motion for nonsuit which motion was granted as to the cross-complaint of appellant.

The material question for determination is contained in the following statement taken from respondent's brief:

"Respondent Allen went into possession and located the ground in controversy, not because he thought the claims had been abandoned or that no assessment work had been performed on them and they were subject to forfeiture, *but because he had undisputable proof that valid mining locations covering the ground in question had never been created by McNeish under the 1928–1931 pretended location or the 1933 pretended locations.*" (Emphasis inserted.)

In other words, if we understand respondent's position, it is that McNeish made no valid discovery or location of the claims in controversy, either in 1928, '31 or '33.

The facts are substantially as follows: Prior to 1920 the Deer Creek Mining & Milling Company was the owner, subject to paramount title of the United States of a group of mining claims embracing the ground in dispute in this action. This corporation expended large sums of money in development and improvement, constructed a mill, flume, buildings, concentration machinery, and tunnels and worked said claims

as a group or unit of lode mining claims. In 1920, the Deer Creek Company failed to do the annual assessment work on the claims and abandoned the same. In August, 1928, Mc-Neish and one Johnson located the Ajax, Orion and Bison claims, and duly and regularly filed notices of location of said claims with the county recorder of Nez Perce county. On June 11th, 14th, and 16th, and July 13th, 14th, 15th and 17th, McNeish alone located twelve further claims adjacent to and a part of the group of claims involved herein, and duly and regularly filed notices of location of said claims with the county recorder of Nez Perce county. All of the foregoing claims were upon the ground included in the claims of the Deer Creek Mining & Milling Company. Johnson who joined with McNeish in the location of the Ajax, Orion and Bison was not a party to this action and it is quite evident from the record that he claims no further interest in the mining claims involved. On January 19, 1933, McNeish, by mining deeds, conveyed to appellant an undivided three-fourths interest in all of the mining claims heretofore referred to, located by himself alone and himself and Johnson, pursuant to a contract theretofore entered into. There is evidence to the effect that appellant and McNeish expended for assessment and development work on the mining claims, the same being worked as a group or unit, more than $100 for each claim, completing the assessment work for the year ending June 30, 1933. There is evidence to the effect that appellant employed one Baker, Davis and Emick, an engineer, who, together with McNeish, did the assessment work for 1933. McNeish resided on these claims, had done so for a good many years, and was still living and making his home at the mining claims at the time of the trial of this action. There is evidence that McNeish agreed to make and file the proofs of labor for the year 1933, prior to July 1st, which proof, as to appellant, McNeish however failed to make and file. In July, 1933, McNeish became associated with one Morrell and one Hansen, the three attempting to file another location on each and all of the claims involved, the same lines being used and the names of the claims being changed; McNeish representing to Morrell and Hansen that the claims had been abandoned and were subject to relocation by reason of

the fact that proof of labor for the year ending June 30, 1933, had not been filed. There is evidence McNeish, Morrell and Hansen did work on said mining claims as a group or unit during the fall of 1933 and the early months of 1934, to the extent of more than $100 for each of said claims. In April, 1934, appellant employed and sent men to the mining claims to do the assessment work for the year ending June 30, 1934. These men were informed by McNeish that appellant had no interest in the claims for the reason that proof of labor for the preceding year had not been filed and that he, Morrell and Hansen had relocated them in their own names, and that neither appellant nor her employees could come upon the claims nor do any work thereon. Such seems to have been about the situation when on July 16, 1934, respondent fell in with McNeish, and, as a result of conversations with McNeish and visits to the claims, Allen on August 30, 1934, after having the claims surveyed, attempted to locate the same, changed the names of the claims, used almost the identical lines of the former claims, filed his location notices in the county recorder's offices of both Nez Perce and Lewis counties, and thereafter brought this action to quiet title to the mining claims.

Respondent's motion for nonsuit, made after appellant rested her case on her cross-complaint, which motion was granted, recited: (1) That the evidence wholly failed to show a valid discovery had been made on the mining claims described in appellant's cross-complaint, and notices of location introduced in evidence; (2) That the evidence failed to show the boundaries of the mining claims duly marked as required by Idaho statutes; (3) That the evidence failed to show that the mining claims mentioned in the cross-complaint conflicted with the claims of respondent. The court granted the motion, dismissed appellant's cross-complaint with prejudice and entered judgment in favor of respondent, quieting his title in all of the claims here in controversy, save and except as against the United States.

To undertake to recite at length the testimony of the various witnesses offered for the purpose of showing or tending to show a valid discovery, marking of the boundaries and a valid location of the mining claims by McNeish alone and by

McNeish and Johnson, prior to the filing of their location notices in the recorder's office would make this opinion too lengthy. In this connection, however, it might be said that when respondent went to the mining claims, evidently for the purpose of making an investigation and to obtain all of the facts in connection with the location of these claims by McNeish and Johnson and McNeish, he learned that they had been formerly located. He was taken by McNeish over the mining claims involved; they were pointed out to him, and subsequently he located identical ground changing the names of the claims. He saw the mill, machinery, the tunnels, the buildings, various workings upon the mining claims, mounds, stakes, etc., all being pointed out to him by McNeish. He was informed that McNeish had by deeds conveyed to appellant a three-fourths interest in the mining claims in question. Not only did he have actual knowledge of the physical facts, but he likewise had constructive knowledge of the location of the claims and that assessment work had been done on the claims, as recited in the location notices and affidavits or proofs of performance of annual assessment work on file in the county recorder's office. In addition to the information he received from McNeish with reference to the location of these mining claims, he was also informed by the surveyor, Iverson (whom he employed to correctly survey and locate the claims) of evidences of former location of the claims, of stakes, mounds and development work. In other words, neither respondent nor his surveyor had any serious difficulty in locating or finding the claims and the boundaries thereof or in discovering mineral bodies thereon and the courses and directions of the ledge or ledges of the respective properties. Both sides admit that the locations were made upon mineral ground. In addition the witnesses Hansen, Morrell, Davis and Baker testified to having seen, and having had pointed out to them by McNeish, location stakes, notices, corner posts, discovery posts or stakes, and excavations or signs of work, which McNeish told them was location work. Portions of the testimony supporting or tending to support marking the boundaries and the doing of location work on the claims by McNeish and Johnson are as follows:

"DAVIS: When we got down there we talked with Mr. McNeish; found out that he had re-located the claims; he showed us his location stakes; *he showed us where he did his work.* . . . .

"A. *These claims, if I remember correctly, were more on an angle like this* . . . . They bore a little bit more to the West. . . . . *And there was evidence of work, and there was stakes.* I know particularly upon the Bison I went to. I ran out two corner lines there; because I was going over the hill to a tunnel; but Mr. Baker and the engineer checked the property from one end to another for stakes and development work . . . .

"A. There was one (stake) that Mr. McNeish said was his monument in a place there where they did some digging there in the ground, right outside the mouth of the tunnel . . . . it was the lower tunnel . . . . it looked to me like somebody had been trying to bury a horse, is about as good as I could come to describing it. . . . . He (McNeish) said that was work that he and Mr. Johnson did on their location.

" . . . . upon the Bison . . . . we were going back to that tunnel to do a little work and cleaning out in there, and *I know where that corner stake is because* . . . . *it was there at that time; and also where the location was on it,* . . . .

"Q. How about the Ajax, the claim the mill was on?

"A. That is what I say right in front of the entrance there *there was evidence of work.* . . . .

"Q. Now, what was the condition of the ground there where that stake was on the Bison? . . . .

"A. . . . . Mr. McNeish told me they had sharpened tools there in preference to taking them down the hill; that they had a little portable forge there when they did that work.

"Q. *Did he say anything about location work at that post?*

"A. *He said that is where they did their work,* and that is the reason they did that blacksmith work there rather than take the tools down the hill to the regular blacksmith forge.

"Q. He and who else did the work?

"A. This Mr. Johnson; . . . .

"Q. The Orion, were you on that?

"A. . . . . I was up there . . . . but at that time those stakes could have been reset, *because Mr. Baker and the*

*engineer had been over the property, . . . . and all the stakes were up at that time. . . . .* Mr. McNeish went with Mr. Baker and with this engineer and there were a few stakes in there that I guess at the time came down or had been torn down or rotted off, and they had quite a bit of work replacing and rebuilding monuments. . . . .

"A. *I went right past the discovery point to the far corner . . . .* we came across the corner, *and what I understand is the discovery is the hole you dig down to your ore, and then you place your monument by that hole. That is the way we found those out there, anyway. The monument was sometimes as far as ten feet away from where this work was done."*

BAKER: "Q. Now, was there any evidence of any work having been done anywhere in the close vicinity of that post (Bison)?

"A. Yes sir.

"Q. What did the ground look like there?

"A. It was more or less hollowed out there. . . . .

"A. He (McNeish) said it was damned hard digging.

"Q. Did he tell you he dug it?

"A. Yes sir. . . . .

"Q. What was the condition of the ground around that (Ajax)?

"A. It was rocky.

"Q. Rocky, and did it show any evidence of any work having been done there?

"A. I would say there was. . . . .

"A. There was some rock piled up there close to this—there was a sort of an excavation there.

"Q. Around the post you have described on the Orion, what was the condition of the ground as to any evidence of any work having been done by man?

"A. Why, near by was an excavation that was filled up slightly with some brush that had fallen in or blown in.

"Q. How far away was that from the post that you have described?

"A. About some—possibly three feet. . . . .

"THE COURT: . . . . You say you have been around the claims. Now, just describe the posts you saw.

"A. Well, the posts that contained these tins, *they were all up*. They were all up.

"THE COURT: You have already described those. Now describe any other posts.

"A. *And what they term the corner posts, those were up with the exception of some three or four that we straightened up and put stone around to brace them up.*"

HANSEN: "A. Well, up on the—where the upper tunnel was in, above the upper tunnel there was a stake up there, and it looked like it was an outcropping. *There had been a lot of digging done around there.* And then there was another stake to the right of that down in the draw. And to the left of the tunnel, on the side hill there was another stake. And then over on the south hillside from the mill there was another prospect hole there, and it had a stake set up there on that. And then upon the hill there was—on the trail that goes to the Horseman mine, there was two stakes on that, on those claims up there. There was a prospect hole to the right of the trail as you went up, and there was a stake there.

"Q. Was there a stake near that prospect hole?

"A. Yes sir.

"Q. Did that show that any work had been done in digging the ground?

"A. Yes sir, but I couldn't say how recently it was. *But I went over the claims pretty thoroughly, and there was stakes all over the claims.* There was some of them that had been rubbed down by stock, and I set up several of them in different instances over the claims; . . . . that is rough country and it would be hard to explain right where they were at. If I was on the ground I could go right to them."

MORRELL: "Q. Now you mentioned an excavation or a hole dug. Where was that hole with reference to the mill?

"A. Well, it was right at the North end of the ore platform where they dump the ore into the upper bin . . . . There was a hole there that showed signs of at least newer excavation than any other parts around there on the claims . . . .

"Q. *Did you notice any corner stakes on the corner lines of it?*

"A. There was one stake due north of the mill, a sideline corner stake right up on top of a prominent point. . . . .

"A. This up here is a high promontory, and up there was one stake; right about here was one stake.

"THE COURT: Indicating a point near the northwest corner of that claim. . . . .

"A. Then down toward the bunkhouse . . . . there was a stake down there.

"THE COURT: Indicating a point which you gentlemen estimate about two hundred feet north of the South line . . . .

"A. Those two stakes, with the exception of this one over here and one over here across this pack trail, that is the only ones I saw that day. . . . .

"A. Right in here,—there is a canyon coming down, a little canyon there was another stake up in there.

"THE COURT: He has his pencil on the Jack Waite.

"A. Later I saw a stake over in this canyon where this creek comes down. . . . . "

██ There is evidence, and in fact it seems to be conceded, that McNeish filed and caused to be recorded notices of location of all the mining claims herein involved, and that he thereafter, each year caused to be filed and recorded affidavits of annual assessment work for all of said claims. McNeish was one of the locators, residing on one of the claims at the time of and prior to the attempted location by respondent. McNeish was a party defendant, duly served, was present at the trial, but defaulted and judgment was entered against him in favor of respondent Allen. It will be remembered that McNeish had lived on and been in possession of the mining property for 20 years, had filed location notices for all the claims involved, had filed affidavits of annual assessment work for all the claims, and had conveyed by deed to appellant a three-fourths interest in all the mining claims involved, representing that he was the owner thereof, all of which being true, his testimony should not have been considered either to defeat or impeach his own representations evidenced by his deed of conveyance.

"So, also, where land has been located as a mining claim, it will ordinarily be presumed that the locators complied with the law and made a discovery. Persons who locate a mining

claim and record a location certificate of such location are estopped, as against a purchaser of an interest in the claim, from showing that the location is void for want of a discovery of mineral in place within the limits of the claim. They cannot be heard to say that they may at will disregard the mandatory provisions of a statute which they themselves have invoked.'' (18 R. C. L., p. 1128, sec. 39.)

''The locators of these claims, with actual knowledge of the facts, caused location certificates to be recorded, thereby representing that discoveries had been made on each, with the expectation and intention of inducing persons who might examine the records to believe that they were the owners of properly located mining claims. This conduct produced intended results. They sold an interest in the claims. Plaintiff examined the records, was induced to believe that the claims had been legally located, and acted on such belief. Whatever rights he has in this action depend upon the facts which the conduct of the locators induced him to believe existed when his interest in the claims was acquired. It would be a travesty on justice to permit the locators to now impair such rights by asserting that their recorded representations were false. Neither of the defendants is in any better position than the original locators, and all are estopped from denying the validity of the Tin Bar locations.'' (*McCarthy v. Speed*, 11 S. D. 362, 77 N. W. 590, 50 L. R. A. 184.)

See, also, *McCarthy v. Speed*, 12 S. D. 7, 80 N. W. 125, 50 L. R. A. 184; *Cheesman v. Hart*, 42 Fed. 98.

In the face of all the facts in the record it would hardly seem that McNeish's testimony was worthy of credence. Without going further into the facts and the knowledge respondent had, this case would seem to fall, so far as the question of discovery is concerned, within the rule announced in *Ambergris Min. Co. v. Day*, 12 Ida. 108, 85 Pac. 109, wherein the following language is used:

''Where one miner has discovered what he considers mineral indications and deposits, and has followed up that discovery by staking the claim and doing the necessary location work, and another miner comes along and makes a discovery, and locates a part or all of the same ground covered by the former location, and thereupon goes into court to contest

the senior location, and in order to sustain that contest shows that the ground does in fact contain valuable mineral deposits as contemplated by section 2320 of the Revised Statutes of the United States, and at the same time contends that the senior locator had not made a mineral discovery, the courts will not examine the evidence of the senior discovery with very great strictness.

"Nor is it essential that the locator of a mining claim should be the first discoverer of a vein or lode in order to make a valid location, and if it appears that the locator knew at the time of making his location that there had been a discovery of a vein or lode within the limits of his location, he may base his location upon it and thus avoid the necessity of making a discovery for himself." (*Pitcher v. Jones,* 71 Utah, 453, 267 Pac. 184.)

The foregoing authority would seem to be in point. Although McNeish by his testimony in effect stated he did not rely upon any former discovery, the record discloses that he had worked for the Deer Creek Mining & Milling Company at and on these same claims, and that after this company had abandoned them he relocated the same.

In *Flynn Group Min. Co. v. Murphey,* 18 Ida. 266, 109 Pac. 851, 138 Am. St. 201, quoting from *Bismark etc. Min. Co. v. North Sunbeam Co.,* 14 Ida. 516, 95 Pac. 14, this court said:

"It is the well settled doctrine of all the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith. . . . .

"Those facts appearing, every reasonable presumption that can be drawn therefrom should be in favor of his knowing of said locations; and his grantees should not be permitted to take advantage of any minor defects in the location notices of said mining claims. If Oster (Allen) had actual notice of the location and boundaries of said claims, neither he nor his grantees will be permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith."

In *Sellers v. Taylor,* 48 Ida. 116, 279 Pac. 617, in the course of the opinion it is stated:

"The object of the statute is to give notice of the location of the claim, and when a subsequent locator has actual knowledge of the location of a claim, he is not misled by a deficient description and cannot take advantage of it. When appellants made their locations they relied on actual knowledge that the ground had been claimed by respondent and were not deceived by the description contained in the notice."

To the same effect see *Burke v. McDonald,* 2 Ida. 679, 33 Pac. 49.

Respondent does not contend that the claims had been abandoned by McNeish and appellant, or that no annual assessment work had been performed on them, and that they were thus subject to forfeiture. Respondent's contention is, and his motion for nonsuit was based upon the proposition, that there had been no valid location of the claims under the 1928, '31 and '33 locations. We do not think this contention can be sustained. There was proof of filing for record location notices for all claims; it is conceded the claims are upon mineral ground; that the claims had been formerly located and worked and valuable minerals removed; there is evidence of a discovery of mineral indications and deposits; the presumption exists that the locators, having filed for record their notices of location, complied with the law and made a discovery; there is evidence that boundaries were marked on all the claims at a time prior to respondent's entry; that location notices and monuments were in place; and there is some evidence at least that location work has been performed on the claims, the latter being especially true of the Ajax, Orion and Bison claims. Further reasons in aid of appellant's position are found in the provisions of 30 U. S. C. A., sec. 38:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; but nothing in this chapter shall be deemed to impair any lien which may have attached in any way whatever to

any mining claim or property thereto attached prior to the issuance of a patent.''

and Morrisson's Mining Rights, sixteenth edition, page 488:

"In the case of *Harris v. Equator M. & S. Co.*, 8 Fed. 863, 3 McCrary 14, cited p. 452, it was intimated in the opinion of the Court, that where a party had been in possession of a mining claim for the period of the statute of limitations, such fact raised a presumption, at least against a wrongdoer, that he held under a valid location, without proof of the various acts of location, and such must from the nature of things be the ultimate decision of all Courts upon this point.—*Cleary v. Skiffich*, 28 Colo. 362, 65 Pac. 59, 89 Am. St. 207, 21 M. R. 284. But such possession does not permit a presumption of discovery.—*Cole v. Ralph* [252 U. S. 286, 40 Sup. Ct. 321, 64 L. ed. 567], *supra. Mining Proves Possession.* The continuous working of a mine, or even its working during successive seasons with intervening seasons during which the mine is left idle, according to the custom of the country, is as complete an adverse possession as could be gained by agricultural operations or other acts of possession.—*Stephenson v. Wilson*, 37 Wis. 482, 13 M. R. 408; *Wilson v. Henry*, 35 Wis. 241, 1 M. R. 152; Id., 40 Wis. 594, 1 M. R. 157; *420 M. Co. v. Bullion M. Co.*, Fed. Cas. No. 4989, 3 Sawy. 634, 11 M. R. 608; *Bell v. Denson*, 56 Ala. 444.''

It is reversible error to grant a nonsuit where the plaintiff has made a *prima facie* case. (*Kroetch v. Empire Mill Co.*, 9 Ida. 277, 74 Pac. 868; *Adams v. Bunker Hill etc. Co.*, 12 Ida. 637, 89 Pac. 524, 11 L. R. A., N. S., 844.) We therefore hold that the court was in error in sustaining the motion for nonsuit on the theory that appellant's proof was not sufficient to establish a *prima facie* case of a valid location of the claims, at least, that no discovery had been made prior to the filing of the location notices.

The court evidently entertained the view that unless appellant first established a discovery of mineral upon the claims there could be no valid location. Having held there was no discovery, the court excluded material evidence strongly tending to show compliance with the mining laws of the United States and of this state in the matter of valid location of the

claims and the doing of location work thereon. Had the court been satisfied there was sufficient evidence to make out a *prima facie* case of a discovery, his rulings no doubt would have been materially different than they were, and evidence excluded would have been admitted, which would have strongly tended to show compliance with the mining laws of this state and the United States in the location of the claims involved. For example the witnesses Davis and Baker testified to the fact that Baker and the engineer employed by them, Emick, had checked the property from one end to another for stakes and development work. The court however refused to permit the witnesses stating what Emick did or found, although it was shown he could not be located as a witness. In this connection the court said:

"Well, don't let us go into that aspect. If the engineer is a mining man and is competent to testify—when I say 'competent' I mean that knows his business.

"A. Well, we was up to see him, but he was out of the community and we couldn't get him . . . .

"THE COURT: All right, the objection is sustained. Mr. McCarty, the Court again says that before you can introduce that line of testimony you must first show that Mr. McNeish had a valid mining claim; and any conversation he (Emick) had with reference to a mining claim, as to what he did or didn't do, is absolutely incompetent until you first show that he has a mining claim, a valid mining claim."

Likewise the court refused to permit conversations or statements made by McNeish to Baker and Davis, although respondent was permitted to testify as to what McNeish had told him with reference to the location of the claims.

We are of the opinion that the court erred in rejecting appellant's exhibit 17, proof of publication of notice of forfeiture of the interest of Galen L. Johnson in the Ajax, Orion and Bison; also appellant's exhibits 18 and 19, deeds from McNeish to Laudahn conveying an undivided three-fourths interest in all the claims; in rejecting exhibit 20, the agreement between McNeish and Laudahn for the conveyance of the three-fourths interest in said claims. This was admissible and no doubt was offered for the purpose of showing title by deed from McNeish to appellant. Along the

same line it would appear that the testimony of Baker, showing consideration paid by appellant to McNeish should have been admitted. The court also erred in rejecting the testimony of Morrell and Hansen as to conversations and statements had with them and made by McNeish in regard to the discovery and location of the mining claims.

In addition to the observations made herein there are other cogent reasons why this case should be reversed and the cause remanded for a new trial but which it does not appear necessary to mention inasmuch as such likely will be corrected upon a retrial.

The judgment is reversed and the cause remanded for a new trial.

Costs are awarded to appellant.

Holden, C. J., and Morgan, Ailshie and Givens, JJ., concur.