THE COPPER GLOBE MINING COMPANY, a Corporation, Respondent, v. T. M. ALLMAN, MARY A. ALLMAN, WILLIAM A. PHILLIPS, JOHN H. BARTON, D. M. ROBERTS, W. D. ROBERTS, JR., S. R. THURMAN, GEORGE HAVERCAMP, C. B. SNYDER and S. S. JONES, Appellants.

MINING CLAIM—SUIT FOR POSSESSION—PREVIOUS LOCATION—BURDEN OF PROOF—INITIAL POINT—OF MINING CLAIM—VALID LOCATION—OF MINING GROUND—ESSENTIALS—UNDER SEC. 1496, R. S. 1898—MINING LOCATION—HOW PERFECTED—UNDER SEC. 1497, R. S. 1898— STATE LAWS—SUPPLEMENTING MINING ACT OF CONGRESS—SEC. 2324, R. S. OF U. S.—DISCOVERY—REQUISITES OF—REQUIREMENTS OF VALID LOCATION—FAILURE TO PERFORM—SUBSEQUENT LOCATION—RIGHTS OF—INVALID LOCATION—WILL NOT SUPPORT DECREE.

1. MINING CLAIM: SUIT FOR POSSESSION: PREVIOUS LOCATION: BURDEN OF PROOF. Where defendants were in actual possession of mining ground at and before the ·institution of suit, under a location, the validity of which was attacked by the plaintiff, only on the ground of a previous location, the burden was upon plaintiff to show that such previous location was made and perfected in compliance, · not only with the laws of the United States, but also with such provisions of the statutes of the State relating to the location of mining claims as are not inconsistent with the United States statutes.

2. INITIAL POINT: OF MINING CLAIM. The place where the notice of location of a mining claim is posted, is the initial point on the lode, of the United States survey of the claim, and from which the boundaries of the claim can only be determined when it is six hundred feet in width.

3. VALID LOCATION: OF MINING GROUND: ESSENTIALS: UNDER SEC. 1496, R. S. 1898. Under section 1496, Revised Statutes 1898, to make a valid location of a mining claim the locator must first discover a lode or deposit of mineral in place, and then erect thereon, or in such close proximity thereto, as to indicate the point selected as the place of discovery, a monument, and post thereon a notice of location which must substantially comply with the requirements of section 1496.

4. MINING LOCATION: HOW PERFECTED: UNDER SEC. 1497, R. S. 1898.   To perfect a mining location, the locator must, within thirty days, and in the manner prescribed by section 1497, Revised Statutes 1898, mark the boundaries of his claim substantially as indicated by the discovery, monument and notice of location, and within the same time as required by section 1498, Revised Statutes 1898, he must file for record with the county recorder, of the county wherein the claim is located, a substantial copy of the notice of location.

5. STATE LAWS: SUPPLEMENTING MINING ACT OF CONGRESS: SEC. 2324, R. S. OF U. S.   The right of a State to pass acts supplementing the mining act of Congress in respect to the location of mining claims is recognized by section 2394, Revised Statutes of the United States.

6. DISCOVERY: REQUISITES OF.   There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals at the place where the notice of location is posted, or in such proximity to it as to justify a reasonable belief in the existence of a lode there.

7. REQUIREMENTS OF VALID LOCATION: FAILURE TO PERFORM: SUBSEQUENT LOCATION: RIGHTS OF.   A mining location is not perfected until all of the essential statutory requirements are performed.   A locator of a mining claim only acquires exclusive right to the possession of the claim when all of the necessary requirements of a location are observed, and if he neglects to perform any necessary requirement within the time prescribed by statute, his attempted location is of no avail as against an intervening location, peaceably and regularly made and covering the same ground, although he shall have performed the neglected requirements after the inception of the second location.[1]

8. INVALID LOCATION: WILL NOT SUPPORT DECREE.   Where it is clear from the evidence that no valid location of plaintiff's claim was made on the ground as found by the trial court, the decree in favor of the plaintiff must be reversed and a decree for the defendant ordered.

Decided April 17, 1901.

Appeal from the Seventh District Court, Emery County.—
*Hon. Jacob Johnson,* Judge.

[1]Compare Klopenstine v. Hays, 20 Utah, 45.

Action to recover possession of certain mining ground and to have a judgment decreeing that defendants have no interest in the ground. From a judgment for plaintiff defendants appealed.

REVERSED.

*M. M. Warner, Esq.,* and *E. A. Wedgwood, Esq.,* for appellants.

This court, in the case of Darger v. LeSieur, 8 Utah 160, affirmed upon re-hearing in 9 Utah 192, decided this identical case, so far as the facts are concerned, and the remarks of the court in that case can be used over again in this, simply changing the name and place of the so-called natural object.

Actual possession by appellants of their Norma No. 2, mining claim, at the time of the commencement of this suit, unless respondent proves title to the property under the law, entitles appellant to a decree as against respondent. Sears v. Taylor, 5 Mor. Min. Rep. 318; English v. Johnson, 12 Mor. Min. Rep. 202.

*Charles DeMoisy, Esq.,* for respondent.

In this cause respondent contends that the case of Darger v. LeSieur, cited by appellants, has no application. The facts present no parallel case—whatever of the decision of this court in the case of Darger v. LeSieur that might be applicable to this cause, has been overruled and modified by the decision of this court in Farmington Gold Mining Company v. Rhymney Gold and Copper Company, — Utah ——. In the last-mentioned case, this court has wisely modified the rigorous rule announced in Darger v. LeSieur.

"If, by any reasonable construction in view of the sur-

rounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient." "Courts have usually construed the statute respecting the location of mining claims with much liberty, and the sufficiency of the location with reference to natural objects or permanent monuments, is simply a question of fact," citing Lindley on Mines, sec. 318-383; Erhardt v. Boaro, 113 U. S. 527, and numerous other authorities.

This court has held that while it has power, under the Constitution, to review questions of fact in an equity case, still, when cases have been regularly tried before a court of chancery, and facts found on all material issues, the court will not disturb such findings unless they are manifestly erroneous. McKay v. Farr, 15 Utah 261; Center Creek Water & Irr. Co. v. Thomas, 19 Utah 360.

BASKIN, J.—The complaint alleges that the plaintiff is the owner (subject to the paramount title of the United States) and in possession and entitled to the possession of the Copper Globe and the Copper Globe No. 1, No, 2, No. 3 and No. 4 mining claims, situate in Emery county, Utah; that the defendants, who are the appellants, claim an interest in said mining claims adverse to the plaintiff, but that such claim is without right. The relief prayed for is that the defendants be required to set forth the nature of their claim and that it be adjudged that the defendants have no interest in the said mining claims of the plaintiff, and that they be forever enjoined from asserting any right thereto. The answer, after denying all of the allegations of the complaint, not specifically admitted, alleges that the defendants are the owners (subject to the paramount title of the United States), in poossession, and entitled to the possession of the Norma No. 2 mining claim, which is identical with the Copper Globe No. 4 mining claim,

as the same is described in the complaint; that the acts of the defendants in developing their said mining claim, and no other, constitute the grievances of which the plaintiff complains; that the mining claim known as the Copper Globe No. 4, is fictitious, and has no existence whatever, and the plaintiff's claim thereto is a cloud upon the said Norma No. 2 mining claim. Defendants pray that their title to said mining claim, Norma No. 2, may be confirmed and quieted, and that plaintiff be enjoined from asserting any claim thereto.

The trial court found that, on the sixth day of February, 1899, the grantors of the plaintiff located the five mining claims described in the complaint, "by the erection of a monument of stone at the place of discovery conforming to law and posted in and upon such monument, on each of said claims, their notice of location containing the name of the lode and claim, the names of the locators, the date of location, the number of lineal feet claimed in length along the course of the vein each way from the discovery monument, with the width on each side of the center of the vein and a description of the claim located by reference to natural objects and permanent monuments in such manner as to identify the same. . . . . That on the twenty-first day of March, the grantors of the plaintiff marked the boundaries of each of said lodes or claims by establishing in each corner thereof and in the center line of each claim, a monument as required by law, and marked upon each of such monuments the name of the claim, and corner, angle, and place that it represented. . . . .

"That the plaintiff is now the owner of the above described mineral lands, subject only to the paramount title of the United States therein, and the plaintiff is entitled to the exclusive possession of all of the above described territory. . . . .

"That at the time said defendants and their grantors entered upon said ground and attempted to locate it as Norma

No. 2, it was not public mineral land open to exploration and location, but at said time plaintiff's grantors held and owned the same under a valid location as Copper Globe No. 4, and the attempted location of the Norma No. 2, by the defendants and their grantors was of no effect whatever as far as it included any of the ground within the boundaries of Copper Globe No. 4, as above described. . . . .

"That defendants claim title in and to said Copper Globe No. 4, adverse to plaintiff, but said claim is without foundation or right and the plaintiff is the owner and entitled to the exclusive possession of all of the above described mining claims and lodes, known as the Copper Globe, the Copper Globe No. 1, the Copper Globe No. 2, the Copper Globe No. 3, the Copper Globe No. 4, as above described."

Each of these findings of fact is assigned as error by the appellants, and the substance of the objections thereto is that neither of them is justified by the evidence.

It appears from the answer, and the court so found, that the defendants make no claim to any of the mining property described in the complaint except the Copper Globe No. 4. The defendants' claim to that property is based on a location alleged to have been made on February 15, 1899, of the Norma No. 2.   The plaintiff's claim to the Copper Globe No. 4, is based upon a location of the same, alleged to have been made February 6, 1899, the notice of the location of which, as recorded in the records of Emery county on the ninth day of February, 1899, is, as follows:

### NOTICE OF LOCATION.

"Notice is hereby given, That the undersigned, having complied with the requirements of section 2324 of the Revised Statutes of the United States and the local laws, customs and regulations of this district, have located fifteen hundred feet

in length by six hundred feet in width, on this, the Copper Globe lode, vein or deposit, bearing gold, silver and other precious metals, situated in No. — District mining district, Emery county, Utah, the location being described and marked on the ground as follows, to-wit:

"Beginning at a stone monument about four feet high, where this notice is posted; thence south 300 feet to post No. 1; thence west 300 feet to post No. 2; thence north 1,500 feet to post No. 3; thence east 600 feet to post No. 4; thence south 1,500 feet to post No. 5; thence west 300 feet to post No. 1; thence north 300 feet to place of beginning. The above described monument and claim is situated about two miles south of the crossing of Devil Canyon, and about 25 miles southeast of Ferron.

"The mining claim above described shall be known as the Copper Globe No. 4.

"Located this sixth day of February, 1899.

"Names of Locators: John H. Barton; A. A. Noon; T. M. Allman; St. V. LeSieur; William A. Phillips."

and upon a regular claim of conveyances from the original locators to it.

The plaintiff does not claim that either it or its grantors have done any work on the Copper Globe No. 4 since its location, or that anything has been done respecting the same, except that on the day of its alleged location a stone monument about four feet high was erected within its boundaries and a notice of location placed thereon, and that afterwards, on the twenty-first day of March, 1899, the same was staked. It does not appear that the plaintiff has ever been in the actual possession of said mining claim.

The defendants, after locating the Norma No. 2, did considerable development work on the same, but at points many

feet distant from the stone monument claimed to have been so erected on the Copper Globe No. 4, and were so engaged at the time of the institution of this action.

As the defendants were in actual possession at and before the institution of this suit, under a location, the validity of which, as appears from the record, was attacked by the plaintiff, only, on the ground of the previous location of the Copper Globe No. 4, the burden was upon the plaintiff to show that the previous location was made and perfected in compliance not only with the laws of the United States, but also with such provisions of the statutes of the State relating to the location of mining claims as are not inconsistent with the United States statutes.   Van Zandt v. Argentine Min. Co., 2 McCrary 159; Bryan v. McCaig, 10 Colo. 309; Sweet v. Webster et al., 7 Colo. 443-450; Hopkins v. Noyes, 2 Pac. 281; McCowan v. McClay, 16 Mont. 234; Barringer on Mines, p. 216; Lindley on Mines, sec. 329.

The rights of the States to pass acts supplementing the mining act of Congress, in respect to the location of mining claims, is recognized in the following language of section 2324 of the Revised Statutes of the United States, to-wit: "The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory where the district is situated, governing the location, manner of recording, .... of a mining claim, subject to the requirements imposed by Congress." This right was also recognized by the Supreme Court of the United States in the case of Erhardt v. Boaro, 113 U. S. 528.

Section 1496 of the Revised Statutes of Utah provides that "The locator, at the time of making the discovery of such vein or lode, must erect a monument at the place of discovery, and must post thereon his notice of location, which notice shall

contain:    (1) The name of the lode or claim; (2) The name of the locator or locators; (3) The date of the location; (4) If a lode claim, the number of linear feet claimed in length along the course of the vein each way from the point of the discovery, with the width on each side of the center of the vein, and the general course of the vein or lode, as near as may be, and such a description of the claim, located by reference to some natural object or permanent monument, as will identify the claim."

Section 1497 requires the locator, within thirty days from the date of the discovery, to mark the boundaries of his claim; and section 1498 requires a substantial copy of the notice of location to be filed for record with the county recorder within thirty days from the date of posting the same upon the claim.

The place where the notice of location is posted is the initial point on the lode of the United States survey of the claim, and from which the boundaries of the claim can only be determined when it is six hundred feet in width.

To comply with the provisions of the Revised Statutes of this State and make a valid location of a mining claim, the locator must first discover a lode or deposit of mineral in place, and then erect thereon, or in such close proximity thereto, as to' indicate the point selected as the place of discovery, a monument, and post thereon a notice of location which must substantially comply with the requirements of said section 1496.    When this is done, it fixes the discovery or initial point of the claim.    To perfect his claim he must, also, within the time and manner prescribed, mark the boundaries of his claim and file a copy of the notice of location for record.    The boundaries so marked should conform substantially to the location indicated by the discovery monument and the notice of location.

It appears from the testimony of St. V. LeSieur, the only

witness in the case who testified that the Copper Globe No. 4 was located at the place and within the boundaries of the same set out in the complaint, that on the twentieth day of March the original monument upon which the notice of location was posted on the sixth day of February, was moved by him about seventy feet, and the notice after the removal was posted upon it. The evidence fails to show that any ore or vein matter has ever been discovered at the place where the first monument was placed, or at the place to which it was removed, or in close proximity to either place. On this subject St. V. LeSieur testified as follows:

"Q. Have you done any work on the Copper Globe No. 4? A. Not a bit. Q. How do you say that vein pitches from the Copper Globe? A. Between fifteen and twenty degrees west. Q. Does it run under the mountain? A. Yes. Q. Isn't there any portion of it on top of the ground on the Copper Globe No. 4? A. There was some mineral on the ground on Norma No. 4, right about there. Q. Where would that be? A. It would be a question whether it would be on No. 4; I considered it on No. 4. Q. Where would that be with reference to your location monument? A. That would be south and east. Q. East three hundred feet and south how far? A. About a hundred feet south. Q. You say you are not certain whether that was on the Copper Globe No. 4, or not? A. I thought it was, I could not tell, it is so rough there. Q. Is there any mineral there in sight? A. Only a little in the mountain. Q. What mountain? A. Copper Globe mountain, and this one, too, this little hill here. Little streaks of copper there, you can see some small streaks. Q. Did you discover any in place there? A. Yes, those streaks are in place."

In other portions of his testimony he stated that at the time he made the location he saw copper on the claim in place

but fails to state that it was at or near the places where he erected the monuments before mentioned.

In the case of Cheesman v. Shreeve, 40 Fed. Rep. 787, Phillips, J., charged the jury "That there should be a discovery of ore, gold or silver-bearing mineral in rock in place, showing a well-defined crevice, a discovery at least ten feet deep from the lowest rim rock thereof; which discovery of mineral must be at the point claimed and designated, or made the point of discovery by the locators of said claim, and so designated in the location certificate relied upon by them in the making of said location. Second: The erection of a location stake at the discovery of said claim, with a plain sign or notice thereon, containing the name of the lode, the name of the locator, and the date of the discovery." Hays v. Lavagnino, 17 Utah 185; Van Zandt v. Argentine Min. Co., 2 McCrary 159; Philpotts v. Blaisdel, 8 Nev. 61.

In Erhardt v. Boaro, 113 U. S. 527-536, the court said:

"A mere posting of a notice on a ridge of rocks cropping out of the earth, or on other ground, that the poster has located thereon a mining claim, without any discovery or knowledge on his part of the existence of metal there, or in its immediate vicinity, would be justly treated as a mere speculative proceeding, and would not itself initiate any right. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence." Doe v. Waterloo Min. Co., 70 Fed. 455-461.

A mining location is not perfected until all of the essential statutory requirements are performed. A locator of a mining claim only acquires exclusive right to the possession of the claim when all of the necessary requirements of a valid

location are observed, and if he neglects to perform any necessary requirement within the time prescribed by statute his attempted location is of no avail as against an intervening location peaceably and regularly made and covering the same ground, although he shall have performed the neglected requirements after the inception of the second location. Wilson v. Triumph Min. Co., 19 Utah 66-74; 1 Lindley on Mines, sec. 330 and cases cited.

The boundaries of the Copper Globe No. 4 were not marked within the time prescribed by section 1497, Revised Statutes of Utah, and it was not staked out until thirteen days after the prescribed time had expired, and until after the rights of the defendants under their location had intervened.

The description of the claim in the notice of location is as follows: "Beginning at a stone monument about four feet high where this notice is posted. Thence south 300 feet to post No. 1. Thence west 300 feet to post No. 2. Thence north 1,500 feet to post No. 3. Thence east 600 feet to post No. 4. Thence south 1,500 feet to post No. 5. Thence west 300 feet to post No. 1. Thence north 300 feet to place of beginning."

The evidence shows that the boundaries of the Copper Globe No. 4, as they are now claimed by plaintiff, and as it was staked on the twenty-first day of March, materially differ from the boundaries in the notice of location, in this: the alleged discovery monument instead of being three hundred feet north from post No. 1, in the center of the south end line, is one thousand and six feet north of the same. So that the claim as stated covers a space of ground seven hundred and six feet in length and of the width of the claim, which is not covered by the notice of location, and the discovery monument as it now stands, instead of being in the center of the claim, is about two hundred feet from the west side line, so that there

is embraced more than three hundred feet of surface east of said monument.

The northeast and southeast corners of Copper Globe No. 4 are situated at the same places as the northwest and southwest corners of the said Copper Globe claim; therefore the former, as claimed by the plaintiff, lies lengthwise, immediately west of and adjoining the latter claim. If the Copper Globe No. 4 claim had been staked in accordance with the calls of the notice of the alleged location thereof, instead of being contiguous to the Copper Globe mining claim, it would have extended seven hundred and six feet beyond the northwest corner of the Copper Globe.

The defendants claim that the Copper Globe No. 4, instead of being located on the west side of the Copper Globe, was located on the east side of the same.

All of the mining claims mentioned in the complaint, according to the respective notices of the locations of the same, were located on the same day, February 6, by the same locators.

The only one of plaintiff's witnesses who testified that the Copper Globe No. 4 was located west of the Copper Globe claim, was St. V. LeSieur. He stated that he first went upon the ground on the sixth day of February, 1899; that he reached the camp there just before dark, and while it was still light, and left there about noon on the seventh. He further testified, as follows:

"Plaintiff's exhibit '5' purporting to be a location of Copper Globe No. 4, is T. M. Allman's writing. I have seen the original on the monument on Copper Globe No. 4. These monuments were constructed February sixth. The one on No. 4, on the seventh, but the notice of the location was put up on the sixth, it was moved on the morning of the seventh to the monument. All of these locations were made on the

night of the sixth. They had them all made except No. 4, when I got there. I did not put up notices for any of these claims. No. 4 was the only one I saw located. When we put up stakes on No. 4, on March twenty-first, I saw no other stakes on the ground. I saw a monument on the ground that had a notice on it—Norma No. 2. I found the Copper Globe No. 4 notice on that day twelve hundred feet south of the discovery monument of No. 4. I carried it up and put it up on the discovery monument. I built a new monument. I did that because the original monument was not in the right place."

The abstract contains no other evidence, except the above, in relation to either the time, manner or place of making the location of the Copper Globe No. 4, as the same is claimed in the complaint, and, is, in substance, all of plaintiff's testimony touching the same.

Barton and Allman, two of the locators, were the active parties in locating the mining claim mentioned in the complaint, and they each testified that the Copper Globe No. 4 was located east of the Copper Globe claim.

Barton, among other details of making the location, testified: "Allman and I crossed the wash and came down to the south line of the Copper Globe claim, and came across here to No. 4, straight east from the lower part of the Copper Globe claim and located a claim called Copper Globe No. 4. It was on the east side of the east side line of the Copper Globe and the old Dead Dane claim. I put up the monument myself, and while I was building the monument Allman wrote out the notice. After we put up the notice on the Copper Globe No. 4, I walked east three hundred feet and set up a side monument, it is there to-day. I helped put up one stake at the northeast corner of Copper Globe. There is an old dead tree fallen over by the wash and we broke off a limb and made a

stake. We put up a stake in the corner of the tree and put a few rocks around it, it is the northeast corner of Copper Globe as it was then, and the northwest corner of Copper Globe No. 4."

Allman's testimony fully corroborates Barton's statements. The testimony of Phillips, another of the locators, sustains the contention of the defendants.

Chris. Jensen testified: "I was at what is termed the Copper Globe mountain about the sixth day of February, and stayed around that locality two or three days. During that time I was on the ground west of the south point of the mountain. I know the Norma No. 2 ground, I was over it during those two or three days. I saw no discovery monument or stakes of any kind. I have been there since that time. I have seen the monument of Norma No. 2, and what has been termed here Copper Globe No. 4. Those monuments or either of them were not there those two or three days I was there. I would say there was no monument on the ground when I went over it where there is now. I have seen monuments now where I know there were no monuments then. There were no discovery monuments on Norma No. 2." He further testified that while he was there he met St. V. LeSieur, Barton, Allman and Phillips.

John H. Childs testified that "on the sixth day of February I met LeSieur at the Copper Globe group. When we got there LeSieur, Allman, Phillips and Barton were on the ground. I stayed around that neighborhood two or three days. We were around the whole of the ground now marked Norma No. 2, lying west of the southern portion of Copper Globe mountain. There were no monuments or stakes on what is now marked as Norma No. 2 property west of the mountain. There is a flat there, if there was anything on it you could see it plain."

The preponderance of the evidence is clearly in favor of defendants' contention.

The trial court granted the decree prayed for in the complaint.

It is clear from the evidence that no valid location of the Copper Globe No. 4 was made on the ground claimed by plaintiff, and it is also clear that the findings and decree are erroneous.

It is ordered that the decree be reversed, and the cause remanded with directions to enter a decree in favor of the defendants, as prayed for in the answer, and that the respondent pay the costs.    *Miner, C. J.,* and *Bartch, J.,* concur.