(December 24, 1913.)

CHARLES SWANSON, Appellant, v. ROBERT KOENINGER, Respondent.

[137 Pac. 891.]

MINING CLAIMS—EXCESSIVE SIZE OF CLAIM—CONFLICT BETWEEN LOCA-
TION NOTICE AND MONUMENTS—IRRECONCILABLE VARIANCE.

1. The locator of a mining claim cannot maintain ownership to. a greater length in either. direction along the ledge or lode than is called for in his notice of location.

2. The general principle that in case of conflict between the loca-tion notice and the boundaries of a mining claim, as marked by the stakes on the ground, the stakes control, applies so far as there is no substantial variance between such stakes and the description in the notice of location.

3. The rule that in the location of mining claims monuments should control the courses and distances is recognized only. in cases in which the monuments are clearly ascertainable and can be definitely located.

4. It is contrary to the policy and spirit of the mining laws to permit a mining claim of excessive size to be staked, thereby afford-ing an opportunity for the stakes to be shifted by the locator so as to include ground proved to be rich in mineral through the develop-ment of adjoining ore bodies.

5. Where the call in a location notice is as follows: "Claiming from this discovery notice and cut or shaft 1,000 feet in a south-easterly direction and 500 feet in a northwesterly direction," while from a map on file it appears that the lode line runs almost due north 780 feet from the discovery and 620 feet in a southeasterly direction to the southerly end line of the claim, the description given is so erroneous as to be delusive and misleading, inasmuch as the

description in the notice and the markings upon the ground do not even approximately agree, and there is a fatal divergence between such description and the markings of the claim upon the ground.

APPEAL from the District Court of the Fourth Judicial District for Blaine County. Hon. Edward A. Walters, Judge.

Action to quiet title to mining property. *Reversed.*

Edwin Snow and J. G. Hedrick, for Appellant.

The fundamental variance between the location notice of the True Friend and the survey is fatal so far as the conflict with Silver Bullion No. 2 is concerned. (*Flynn Group Min. Co. v. Murphy,* 18 Ida. 275, 138 Am. St. 201, 109 Pac. 851.)

Where the courses and distances are not with certainty defined by monuments or stakes, the calls in the location notice must govern and control. (*Treadwell v. Marrs,* 9 Ariz. 333, 83 Pac. 355.)

"The boundaries of a mining claim are fixed by the original location, consisting of recording and notice, planting stakes, etc., and not by subsequent recognition of different boundaries." (*Overman Silver Min. Co. v. American Min. Co.,* 7 Nev. 312.)

"If there is a doubt as to the monuments, there can be no reason for holding that the monuments should prevail." (*Thallman v. Thomas,* 102 Fed. 953.)

"Boundaries marked upon the ground should substantially conform to the location indicated by the discovery monument and notice of location in order that the monument should control." (*Copper Globe Co. v. Allman,* 23 Utah, 410, 64 Pac. 1019, 21 Morr. Min. Rep. 296.)

"The object of the law in requiring the location of a mining claim to be marked upon the ground is to fix the claim and prevent swinging or floating, so that those who in good faith are looking for unoccupied ground in the vicinity of previous locations may be able to ascertain exactly what has been appropriated in order to make their locations upon the

residue.'' (*Book v. Justice Min. Co.*, 58 Fed. 106; *Daggett v. Yreka Min. etc. Co.*, 149 Cal. 357, 86 Pac. 968.)

Sullivan, Sullivan & Baker and Frank Reeves, for Respondent.

Stakes control over the distances in the location notice. (*Sturtevant v. Vogel*, 167 Fed. 448, 93 C. C. A. 84; *McEvoy v. Hymon*, 25 Fed. 596, 599, 15 Morr. Min. Rep. 397; *Book v. Justice Mining Co.*, 58 Fed. 106, 115, 17 Morr. Min. Rep. 617; *Meydenbauer v. Stevens*, 78 Fed. 787, 18 Morr. Min. Rep. 578; *Smith v. Newell*, 86 Fed. 56; *Meyer-Clarke R. M. Co. v. Steinfield*, 9 Ariz. 245, 80 Pac. 400; *Upton v. Santa Rita Min. Co.*, 14 N. M. 96, 89 Pac. 275; *Pollard v. Shively*, 5 Colo. 309, 2 Morr. Min. Rep. 229; *Cullacott v. Cash G. M. Co.*, 8 Colo. 179, 6 Pac. 211, 15 Morr. Min. Rep. 392; *Treadwell v. Marrs*, 9 Ariz. 333, 83 Pac. 350; 1 Lindley on Mines, sec. 382; 1 Snyder on Mines, sec. 392; Martin's Mining Law, sec. 151; *Cardoner v. Stanley C. M. & M. Co.*, 193 Fed. 517.)

This has already been decided by the supreme court of this state in *Nichols v. Lewis & Clark Mining Co.*, 18 Ida. 232, 109 Pac. 846, wherein this court held: ''Indeed, the general rule prevails that courses and distances give way to the actual monuments and markings on the ground.'' *Flynn Group Min. Co. v. Murphy*, 18 Ida. 276, 138 Am. St. 201, 109 Pac. 851, relied upon by appellant, is not in point. In the case at bar there is no excess ground, as the True Friend is a short claim, containing less than eighteen acres, and was staked less than 1,500 feet in length. This court has not held, and has certainly not intended to hold, that where a claim has been staked in good faith and a mistake has been made in the distances each way from the discovery, but where there is less ground actually staked than is allowed by law, any portion of the claim is void. In such a case it is not a question of excess, but simply one of variation between calls in the notice and monuments on the ground.

STEVENS, District Judge.—This is a suit adverse to the mineral patent of the defendant's mining claim, called the True Friend. Upon the filing of the map and field-notes of the survey of this claim for patent, the plaintiff Swanson filed suit, setting up his claim to two certain areas thereof respectively, in conflict with defendant's claim, the Silver Bullion and Silver Bullion No. 2. The Silver Bullion is admittedly a senior location to the True Friend, while the Silver Bullion No. 2 is admittedly a junior location. Upon the trial of this cause without a jury before the district court of the fourth judicial district, in and for Blaine county, the court awarded to the plaintiff the area in conflict between the Silver Bullion and the True Friend, evidently on the ground of the seniority of the former. But with respect to the second and larger area in conflict between plaintiff's claim Silver Bullion No. 2 and the True Friend claim of the defendant, the court decided that title to such area should be quieted in the defendant, evidently also upon the ground of the seniority of the location. From this portion of the judgment the plaintiff appeals.

Stated generally the errors assigned are:

1. That the court erred in not holding and deciding that appellant was the owner of and entitled to the possession of that portion of the True Friend mining claim in conflict with the Silver Bullion No. 2.

2. That the court erred in holding and deciding that the respondent was entitled to a patent to that portion of the True Friend mining claim in conflict with said Silver Bullion No. 2.

3. That the court erred in not holding and deciding that the patent survey of the True Friend mining claim, so far as it included the area in conflict with said Silver Bullion No. 2, did not correctly represent and include the True Friend mining claim as located.

It is stipulated that there are three claims involved in this action, the Silver Bullion and Silver Bullion No. 2, owned by the plaintiff, and the True Friend, owned by the defendant. To avoid proving the locations of these three

claims, the stipulation covered certain facts, such as, that the locators were citizens of the United States; that they discovered a vein or lode of quartz or other valuable rock, in place bearing gold, silver, lead, etc.; that the land located was unoccupied mineral land of the United States (except the areas in conflict, which was to be determined by the evidence); the actual staking of the claims (except the points where the stakes were set); the size and markings of the posts; the posting of notices of location and their contents; the recording of the notices; that assessment work had been done at all times since the location thereof, and the stakes kept up in accordance with the law (except as to the location of the points where they were kept up); that the respective parties were the owners of the different claims as alleged, and had had possession of their claim or claims since the location thereof (except the areas in dispute, which was to be determined from the evidence).

The location notice of the True Friend claim is in part as follows:

"Claiming from this discovery notice and cut or shaft 1,000 feet in a southeasterly direction and 500 feet in a northwesterly direction . . . . adjoining on the northerly end the Independence and the Silver Bullion lodes, situated in the Warm Springs Creek Mining District, Alturas County, Idaho Territory."

The real question before the court, stripped of verbiage, is the locality of the True Friend location, in so far as there is a conflict with the Silver Bullion No. 2 claim, the claim of respondent being that the location of the stakes upon this claim should govern the calls in the notice. Appellant quotes at length and seems to rely upon the case of *Flynn Group Min. Co. v. Murphy,* 18 Ida. 266, 138 Am. St. 201, 109 Pac. 851, which seems to be in point in this case, although going to the extreme limit to which the court is inclined at this time to go upon that question. In that case the court said:

"In the location notice of said Snowdrift lode it is stated that said claim extends in a northwesterly direction along

the lode 700 feet, and in a southeasterly direction along the lode 800 feet. That notice fixes. the distance along the lode that said claim extends from the point of discovery. The ground beyond the 800 feet southeasterly from the discovery was not included in said claim, even though the stakes marking the northeasterly and southeasterly corners of said claim were placed beyond the 800 feet. Any locator had a right to go to the point of discovery of the Snowdrift claim and measure the ground from the discovery point 800 feet in a southeasterly direction along the lode, and if there was any unlocated ground beyond the 800 feet, locate it, regardless of the fact that the easterly end stakes had been established beyond the 800 feet.''

And again, upon rehearing, the court said: ''Under the law, a locator should not be permitted to hold an excess of ground with a single location, and when his notice provides that his mining claim extends a certain number of feet in a certain direction from the discovery, subsequent locators may be governed by the statement in the notice and not by stakes that include within their boundary an excess of surface ground.''

Again the court says in the same case: ''There is no contention made in the case at bar that the excess in the Snowdrift location, if there was any, was the result of fraudulent intent, but we think it is conceded that such excess, if there was any, was the result of innocent error.''

After careful consideration of the decision in *Flynn Group Min. Co. v. Murphy,* we cannot escape the conclusion that it is based on the fact that a locator cannot claim a greater length in either direction along the ledge or lode than is called for in his notice of location. In that case, as in the case at bar, the location notice was posted at the discovery and not upon either of the end stakes, and the court said: ''Under that notice he was only entitled to 800 feet in a southeasterly direction from the discovery point.''

The location notice calls for 500 feet in a northwesterly direction from the discovery. The claim as surveyed for patent swings the northerly part from an angle of about

45 degrees to a straight northerly direction from the discovery point, so that the location notice is misleading with respect to the adjoining claims on the north, the extent of ground claimed northerly from the discovery and with respect to the course of the vein, as well as the direction from discovery. All these points together show that the location notice instead of performing the function designed by law, that is to say, informing the public of the precise ground claimed thereunder, misleads in every particular when it is made the basis of a claim to the ground included in the patent survey.

The general principle that in case of conflict between the location notice and the boundaries of a claim as marked by the stakes, the stakes should control, applies only so far as there is no substantial variance between such stakes and the notice of location. There is no doubt that this rule should apply where the stakes can be definitely located; but in the case at bar there seems to be much uncertainty as to the original location of the stakes.

In *Treadwell v. Marrs,* 9 Ariz. 333, 83 Pac. 350, the court says: ''The well-settled rule in that respect is that, where the monuments are found upon the ground, or their position or location can be determined with certainty, the monuments govern, rather than the location certificate; but where the course and distances are not with certainty defined by monuments or stakes, the calls in the location notice must govern and control.''

The rule applied to the location of mining claims that monuments should control courses and distances is recognized only in cases in which the monuments are clearly ascertained. If there is a doubt as to the monuments, there can be no reason for holding that the monuments should prevail. (*Thallman v. Thomas,* 102 Fed. 935.)

In *Copper Globe Min. Co. v. Allman,* 23 Utah, 410, 64 Pac. 1019, 21 Morr. Min. Rep. 296, we find: ''The boundaries so marked should conform substantially to the location indicated by the discovery monument and the notice of location.''

"The object of the law in requiring the location of a mining claim to be marked upon the ground . . . . is to fix the claim,—to prevent floating or swinging, so that those who in good faith are looking for unoccupied ground in the vicinity of previous locations may be enabled to ascertain exactly what has been appropriated, in order to make their locations upon the residue." (*Gleeson v. Martin White Co.,* 13 Nev. 442; *Book v. Justice Min. Co.,* 58 Fed. 106; *Daggett v. Yreka Min. & Mill. Co.,* 149 Cal. 357, 86 Pac. 968.)

The wisdom of the rule laid down in these cases cannot be questioned, as it is contrary to the policy and spirit of the mining laws to permit a mining claim of excessive size to be staked and then afford the opportunity for the stakes to be shifted at the locator's pleasure to include ground proved to be rich in mineral through the development of other ore bodies.

In *Leveridge v. Hennessy* (Mont.), 135 Pac. 906, we find this language referring to the notice: "Such a statute, it is true, does not require that the declaratory statement contain a description by metes and bounds (*Upton v. Larkin,* 7 Mont. 449, 17 Pac. 728; *Gamer v. Glenn,* 8 Mont. 371, 20 Pac. 654), but it does require that, taking the discovery as the initial point, the boundaries be so definite and certain as that they can be readily traced (*Hauswirth v. Butcher,* 4 Mont. 299, 1 Pac. 714), and that the declaratory statement contain directions which, taken with the markings, will enable a person of reasonable intelligence to find the claim and run its lines. (Lindley on Mines, sec. 381; *Gamer v. Glenn, supra; Bramlett v. Flick,* 23 Mont. 95, 57 Pac. 869.) While neither mathematical precision as to measurements nor technical accuracy of expression is expected, the degree of accuracy that is required is indicated by the fact that the locator after his discovery had 30 days in which to definitely ascertain the course of the vein and mark his boundaries and 30 days more in which to file his declaratory statement describing his claim so that it could be identified. (*Sanders v. Noble,* 22 Mont. 110, 55 Pac. 1037.) That degree of accuracy is not met if the description given is so

erroneous as to be delusive and misleading, as when the declaratory statement and the markings upon the ground do not even approximately agree as to the general shape of the claim or as to any point, direction, or distance. (*Dillon v. Bayliss,* 11 Mont. 171, 27 Pac. 725.)"

Recurring then, to the location notice of the True Friend claim, we observe that its call is—"claiming from this discovery notice and cut or shaft 1,000 feet in a southeasterly direction and 500 feet in a northwesterly direction," while in truth, from the map on file, we find the lode line runs almost due north 780 feet from the discovery and 620 feet in a southeasterly direction to the southerly end line of the claim.

The description in the notice suggests that the claim is in the form of a parallelogram, and that one finding the corners at the end lines might proceed at right angles to find the other stakes. As a matter of fact, if he did so he would have missed the northerly end stakes by several hundred feet. It is a rational inference that much difficulty might be expected in an attempt to find the lines and corners with the aid of the location notice, and certainly no one would suppose the True Friend as marked and the True Friend described in the location notice to. be one and the same, and this point must be determined by the criterion upon which it is assailed, viz., a fatal divergence between the location notice as filed and the markings of the claim upon the ground.

We are of the opinion, after a careful consideration of all the facts herein and the authorities, that in so far as there is a conflict between the True Friend location and the Silver Bullion No. 2, the True Friend location is void, and the title to the area in dispute should be quieted in the appellant. Judgment *reversed.* Costs awarded to appellant.

Ailshie, C. J., and Stewart, J., concur.