**GREAT SALT LAKE MINERALS & CHEM-
ICAL CORPORATION, a Delaware Cor-
poration, Plaintiff and Appellant,**

v.

**ARTHUR G. McKEE & COMPANY, a Dela-
ware Corporation, Defendant
and Respondent.**

No. 13858.

Supreme Court of Utah.

Aug. 4, 1975.

Claron O. Spencer, of Senior & Senior, Salt Lake City, for plaintiff and appellant.

Merlin O. Baker, of Ray, Quinney & Nebeker, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff, Great Salt Lake Minerals & Chemical Corporation (herein, GSL) sued Arthur G. McKee and Company (herein, McKee), whom plaintiff had hired to do the engineering and supervision of construction of an industrial plant, alleging McKee had failed in its duty to require a subcontractor, Houben Industries, Inc. (herein, Houben), to obtain a performance bond and the latter had failed to complete its job. The position of plaintiff, GSL, is that under the circumstances defendant McKee should be charged with the responsibility of seeing that the performance

bond was obtained; and that because it failed to discharge that duty, it should be held liable for additional expenses incurred by GSL when it had to engage another subcontractor to complete Houben's contract.

Upon a plenary trial the court made findings of fact and entered judgment in favor of the defendant. Plaintiff appeals and assigns a number of errors all of which center upon the proposition that the evidence does not justify the findings and judgment.[1]

Plaintiff's contention is grounded in both breach of contract and negligence in performance of duty. Under either theory, the key issue is whether the relationship between GSL and McKee was such that McKee had the duty to see that Houben had furnished the bond referred to, failing which, McKee could be held liable for loss suffered by GSL when Houben did not complete its part of the project.

In 1965, GSL began research and development on processes to extract and separate minerals from the Great Salt Lake.[2] A system of solar evaporation ponds was completed in 1968. Meanwhile, the company had developed processes for separating the mineral salts from the mixture obtained by evaporation. Early in 1968 the company sought the services of McKee, an engineering firm, for the detailed design of a plant to carry out these processes and supervision of the plant construction. No formal and complete contract was ever executed. The mutual obligations of these parties must be determined from a letter of intent, certain conversations, and their conduct.

On January 9, 1969, the defendant McKee, gave a letter of intent to the plaintiff, GSL, under which McKee was to perform engineering and procurement services relative to the construction. As the project progressed, GSL assumed a greater and greater participation in the work originally assigned to McKee. Portions of the engineering and design work were taken from McKee and assumed by GSL or given to other companies. On August 20, 1969, GSL sent its purchasing agent, Fay Derricott, to McKee's San Francisco office to act as an expediter for the project. The duties of an expediter involve following the progress of purchase orders to insure compliance with terms, specifications and deadlines.

As part of the project, McKee solicited bids for a conveyor system and evaluated the bids for GSL. GSL rejected the recommended (and lowest) bidder in favor of Houben Industries, which had been evaluated by McKee as having "a fairly high degree of experience in the materials handling field. However, the experience, facilities, financial capabilities are definitely inferior to those offered . . . [by the other bidder]."

On September 18, 1969, McKee, as agent for GSL, issued a purchase order to Houben covering the complete design, supply, fabrication and construction of the conveyor system. One of the terms of this purchase order was as follows:

PERFORMANCE BOND: Vendor (Houben) to obtain Performance Bond in the amount of $300,000 and to furnish Purchaser 3 copies of bond without delay. Cost of bond for Owner's account, $3,000.00.

This latter provision plainly obligated Houben to secure the performance bond, though the cost was to be charged to GSL. The bond was not made a condition precedent to Houben's commencement of its work and Houben began design and engineering work immediately. Under the

---

1. A counterclaim by McKee was decided in its favor and that portion of the judgment is not contested on appeal.

2. The evidence is reviewed in the light most favorable to the trial court's findings; see

*Lawrence v. Bamberger Railroad Co.*, 3 Utah 2d 247, 282 P.2d 335 (1955); *Rummell v. Bailey*, 7 Utah 2d 137, 320 P.2d 653 (1958).

purchase order, Houben would make monthly progress billings to GSL. The first such billing was made in early November, 1969. It did not include the cost of a bond. Inquiries as to whether Houben had obtained the bond were made by McKee's purchasing agent on November 6 and 18, 1969. Both times, the Houben representative stated that the bond would be provided shortly.

In the meantime, on November 12, 1969, United Bonding Company (in no way involved here) filed suit against Houben (and others) for failure to perform on other projects. On November 14, 1969, the attorney for the bonding company requested that GSL honor an assignment of amounts payable to Houben. GSL first took the position that, under the terms of the purchase order, an assignment could not be made without prior written approval of McKee. However, without consulting McKee, GSL later decided to send the first payment to the offices of the attorney representing United Bonding. Notwithstanding the fact that it had this information, GSL allowed Houben to continue on the project and continued to pay the billings.

On December 19, 1969, GSL terminated, effective January 2, 1970, the remaining engineering services which McKee was then performing. On May 13, 1970, Houben, by letter, advised GSL that "due to the financial conditions of Houben" it could not complete the conveyor system. Thereafter GSL secured the services of another contractor to finish the conveyor system which was completed at a cost of $446,480 in excess of the agreed price with Houben.

Among the trial court's findings of fact the most important is that GSL assumed the expediting functions for the project, including the "duty or obligation to inquire of Houben as to the status of the performance bond . . . ." The court also found

the "GSL, through its authorized agents, Fay Derricott [purchasing agent] and Wolfgang Brinkmann [project manager], knew that Houben had not obtained the performance bond, . . ." and that ". . . on November 14, 1969, GSL knew, or in the exercise of reasonable care should have known, that Houben was in serious financial difficulty and probably would not have been able at that time to secure the bond."

From its findings the trial court concluded that the plaintiff had failed to show that defendant, McKee, had a duty to see that the bond for the subcontractor, Houben, was procured. It affirmatively found that any damages suffered by plaintiff, GSL, because of Houben's failure to obtain the performance bond, was not the result of any failure of duty on the part of McKee, but was the direct and proximate result of plaintiff's own failure.

In reference to the plaintiff's argument concerning these findings, it is significant to observe that it is not necessary that the findings just referred to be supported by substantial evidence. As a predicate to the plaintiff's right to recovery, it had the burden of proving by a preponderance of the evidence that McKee had the duty to see that Houben furnish the performance bond. The trial court was not persuaded that he should so regard the evidence. In that situation, unless the evidence is such that all reasonable minds must necessarily so find, we cannot overturn the action of the trial court and compel such a finding.[3] It is our opinion that the evidence here does not meet that test.[4]

Affirmed. Costs to defendant (respondent).

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., concurs in the result.

---

3. *Howarth v. Ostergaard.* 30 Utah 2d 183, 515 P.2d 442.

4. We find no sufficient merit in other errors assigned to justify discussion with any thought they would have produced a different

result. See Rule 61, U.R.C.P.: *Wilson v. Gardner*, 10 Utah 2d 89, 348 P.2d 931 (1960); *Ewell and Son, Inc. v. Salt Lake City Corporation*, 27 Utah 2d 188, 493 P.2d 1283 (1972).